Fletcher, J.
No question is made in regard to the declaration, but it is assumed, that it contains all the material facts in the case; and the particular form of stating the facts cannot affect the principles of law applicable to the case, or the decision of the court, which must be founded on these principles. The defendants having paid their proportion of the expenses of repairing the damage done to the plaintiffs’ ship by the collision, the plaintiffs claim, in this suit, the amount of damages and costs paid by them to the owners of the steamer, under the decree of the coiut of admiralty, together with the costs and expenses of defending the suit in that court, and the costs and expenses of prosecuting a cross action for damages against the steamer and her owners.
By the agreement of the parties, all proper inferences from the facts stated are to be drawn by the court; and from the *488 fact, that damages and costs were decreed by the court of admiralty, in favor of the owners of the steamer against the owners of the ship, it must be inferred that there was negligence in the navigation of the plaintiffs’ ship. But the decree itself is in the most general form; the judge “ pronounced for the damage proceeded for in this cause,” without stating the negligence or any thing else as the ground of the decision, though negligence in navigating the plaintiffs’ ship was alleged in the libel.
But it is the well known law of the English courts of admiralty, upon the subject of collision, that where a vessel, which runs another down is alone in fault, in such case and in such case only, the injured party is entitled to entire compensation from the other. The plaintiffs having been compelled by the decree of the court of admiralty to pay the amount of damage done to the steamer, it must be assumed that the charge of negligence in the navigation of the plaintiffs’ ship was established. The great prominent question in the case therefore is, whether the defendants, as insurers of the plaintiffs’ ship, are bound to indemnify them for the amount they were obliged to pay the owners of the steamer for the damage done to the steamer by the collision, the collision having happened in consequence of the negligence in the navigation of the plaintiffs’ ship.
This is certainly a deeply interesting question in a community so largely commercial as our own, and it is highly important that the decision of it should be such, as to carry out and give effect to the intention of the parties, and accomplish the object designed to be accomplished by the useful and beneficent contract of insurance. It does not appear by any evidence in the case whether underwriters have or have not been accustomed heretofore to indemnify persons insured for payments which they have been obliged to make to the owners of other vessels for damage by collision. In the absence of all proof on the subject, conjectures would be useless. It is laid down as law by Emerigon that in cases of collision, where it is impossible to ascertain where the fault really lies, the aggregate damage being in such case equally *489 divided between the two vessels, if the owner of the vessel insured is obliged to pay any thing to the owner of the other vessel, the underwriters are responsible for such payment. Under the English law, where there is no blame imputable to either party in a collision, neither party is Rabie to the other for any damage, and of course, in such case, there can be no claim on underwriters for payment for damage to another vessel. The liabiRty of underwriters for losses from perils insured against, where the perils happened in consequence of negligence in the navigation of the ship insured, has been estabRshed only by the modern decisions. Modern cases only can justly be expected to have arisen under the modern law. Under such circumstances, the idea, that there can be any practical construction of the law in opposition to the plaintiffs’ claim in this case, must be whoUy illusory.
New questions under aU the various heads or branches of the law, including those most familiar and best understood, are constantly arising, and, as they arise, must be settled by the court by the appRcation of just principles and analogies. The judicial decisions in England and the United States form a most material and important part of the law of insurance in its present improved state, as a weff defined, symmetrical system. Though a court may not always find in these decisions a precedent directly in point, yet it will rarely fail to find principles and analogies often quite as satisfactory, to the judicial mind, as a precedent. The contract of insurance is pecuRar, relating to large and various interests, including numerous parties, and subject to the influence of various casualties. Such a contract must from its nature unavoidably give rise to many questions and controversies.
By this poRcy the defendants became the insurers for a certain amount on the plaintiffs’ ship, and took upon themselves, among other things, the perils of the sea, and engaged to indemnify the plaintiffs for all losses sustained by them by the perils of the sea in the largest import of the terms. While the plaintiffs’ ship was saiRng under the protection of this poRcy, she came in collision with a British steamer, by which coUision both the ship and the steamer were damaged. In *490 addition to the cost of repairing their own ship, the plaintiffs have been compelled by a decree of the court of admiralty in England to pay, and have paid to the owners of the steamer the amount of damage done to her by the collision. The defendants have paid the expenses of repairing the plaintiffs’ ship, and the plaintiffs seek in this suit principally to recover the amount paid by them to the owners of the steamer, which the defendants refuse to pay, alleging that that was not a loss by the perils of the sea, against which they insured. That collision, whether occasioned by negligence or not, is a peril of the sea, is perfectly well settled, and is not now questioned by the defendants, and they have paid the costs of repairing the damage done to the plaintiffs’ ship by the collision.
The plaintiffs allege that the sum, which they had to pay for damage to the steamer, was a loss by a peril of the sea, that is, the collision; but this is denied by the defendants. We are thus led at once to inquire what losses come within the provision of the policy, as losses by the perils of the sea. In ascertaining the cause of a loss in question, in a case of insurance, courts are governed by the well known maxim of the law, in jure non remota causa sed próxima spectatur. This is now the well established rule, and is taken to be in accordance with the intention of the parties to the contract. The contract of insurance must be interpreted according to the true meaning and intention of the parties. This is the great governing principle of the interpretation of such contracts. Every stipulation in the policy is to be construed favorably to the party entitled to its benefit, as it must be presumed that he understood it in its most favorable sense, and that the other party intended he should so understand it. As the contract of insurance is a contract of indemnity to the assured, it is to be liberally construed in his favor. There can be no doubt that the assured intends to obtain the fullest and most ample indemnity, and that the insurer means that he shall understand that his policy affords him that indemnity. The policy therefore should be so construed as to fulfil these inten tions. It is only by such construction that the contract of *491 insurance can accomplish its useful and important purpose, and the commerce of the world be carried on. When the plaintiffs in this case obtained insurance against losses by the perils of the sea, these terms were no doubt understood by them in their largest sense, as covering all losses justly attributable to those perils, and no doubt the defendants intended that they should thus understand and interpret their policy. To carry into effect these intentions, the policy must be construed favorably for the insured, to give them that security, which they believed, and had a right to believe, they had obtained. There should be no subtle reasoning, no shadowy distinctions, no straining of rules to narrow and restrict the operation of the contract so as to defeat the intention of the parties. The parties no doubt took a practical view of the matter and had reference to all possible losses, known and unknown, which might be justly attributable to the perils of the sea, in the broadest import of the words. They acted on no nice distinctions or subtle reasoning. They could not of course foresee and specify the losses, but could only use general terms. “ The policy sweeps within its inclosure every peril incident to the voyage, however strange or unexpected, unless there be a special exception. The perils enumerated in the common policy are sufficiently comprehensive to embrace every species of risk, to which ships and goods are exposed from the perils of the sea and all other causes incident to maritime adventure.” 3 Kent Com. (6th ed.) 291. The parties no doubt very well knew that there were many losses by the perils of the sea, other than the direct damage to the ship insured. To hold the defendants liable only for the direct damage to the ship insured, would leave the plaintiffs exposed to ruin in various ways, without the protection they intended to obtain and supposed they had obtained under their policy. To give effect to the meaning and intention of the parties therefore, the defendants must be held responsible for all losses justly attributable to the perils of the sea, as well as for the direct damage to the ship itself. Pothier Contrat d’ Assurance, § 49, says distinctly, that in his opinion the underwriters are liable not only for the injury done to the *492 subject insured by the perils insured against, but to expenses and charges occasioned by those perils; as the expense of unloading the goods in case of a ship being wrecked by a storm. Mr Justice Story, speaking for the supreme court of the United States, and referring to Pothier and other foreign writers, in Peters v. Warren Ins. Co. 14 Pet. 112, says, “ In short, all those learned foreign writers hold the doctrine, that whenever the thing insured becomes by law directly chargeable with any expense, contribution or loss, in consequence of a particular peril, the law treats that peril, for all practical purposes, as the proximate cause of such expense, contribution or loss; and this they hold, not upon any peculiar provision of the French ordinance, but upon the general principles of law applicable to the contract of insurance. In our opinion this is the just sense and true interpretation of the contract.” The same learned judge, in Hale v. Washington Ins. Co. 2 Story R. 189, says, “ any and every expense borne by and chargeable upon the owner of the thing insured, as a direct and immediate consequence of a peril insured against, is covered by the policy.”
This principle is clearly illustrated by the liability of underwriters for a general average loss. A ship is insured against the perils of the sea, a part of the cargo is thrown overboard by reason of a peril of the sea, and the ship and owner become at once chargeable for a proportion of this loss of the cargo, and the underwriter is held bound by the policy to indemnify the owner of the ship for the sum he has to pay to make up the loss of the cargo. Here is no damage to the ship insured, but the sum thus charged upon the owner and ship, for the cargo, is held to be a loss by the perils of the sea for which the underwriter is responsible.
So in case of insurance against capture, the underwriter is liable not only for any damage the ship may have actually sustained by a capture, but also for all necessary expenses, such as salvage, &c. which the assured has been put to for the recovery of his property. Thus it has been determined that the underwriter is liable for a sum of money paid by the. neutral assured to belligerent captors as a comoromise, made *493 bond fide, to prevent the ship being condemned as prize. 2 Arn. Ins. 809, 810. So the liability of underwriters for salvage expenses depends not upon their having engaged to indemnify against them by any express words in the policy, but upon their being made by the law of the land, or the general law maritime, a direct and immediate consequence of perils against which they do insure. 2 Arn. Ins. 846, 847. Reference might be made to many other charges, expenses and losses, distinct from the thing insured, and not mentioned by any express words in the policy, for which the underwriter is liable, but they all depend on the general principle, that where the thing insured becomes by law directly chargeable with any expense, contribution or loss, in consequence of a particular peril, the law treats such peril, for all practical purposes, as the proximate cause of such expense, contribution or loss.
Upon any other principle, policies of insurance, instead of being a protection,would serve but to allure men to then- ruin. Upon this principle,the liability of the defendants for the sum claimed in this suit would seem to be too clear for controversy. To hold that the defendants are not liable in this case, would conflict directly with the doctrine held in the analogous cases, which have been referred to, and thus introduce inconsistency into the law, where consistency and uniformity are most essential.
The plaintiffs’ ship, insured by the defendants, came in collision with the British steamer, by which collision the steamer was damaged and eo instanti the plaintiffs and their ship became chargeable by law with the amount of the damage done to the steamer; this damage the plaintiffs have been obliged to pay and have paid and lost, and this loss they now claim under their policy. It was surely the collision which brought the loss on the plaintiffs, the collision did the damage, and that act instantly fastened the loss on the plaintiffs, so that the plaintiffs’ loss was the direct and immediate consequence of the collision, which was a peril insured against and for which the defendants are liable.
The defendants admit that they are liable for damage done *494 to the plaintiffs’ ship by the collision; but the same collision which damaged the plaintiffs’ ship damaged also the steamer, and the loss of the damage of the ship, and the damage of the steamer fell on the plaintiffs in one mass, at the same time and from the same cause. The same peril, the collision, took out of the plaintiffs’ pocket, at the same time, the amount of the damage to the ship and the damage to the steamer, as one entire result or consequence. It was precisely the same to the plaintiffs, as if the whole damage had been done to their own ship. To separate this aggregate result of the same peril, acting at the same time, and under precisely the same circumstances, into parts, and hold the defendants answerable for one part, and not for another part, requires a course of reasoning quite too subtle and metaphysical to be useful or safe in dealing with a practical matter like insurance. The parties to the contract can hardly be supposed to have intended to make such a paradoxical distinction. Some examination of the positions maintained in the argument in behalf of the defendants will more fully exhibit the grounds of defence.
It is said, that a policy on a vessel insures that particular vessel; that in fixing the amount of premium, &c. the underwriter is materially influenced by the age, size and strength of the vessel, which is the subject of the policy, and of these he has the means of knowledge, and acts upon that knowledge; but that a claim like that made by the plaintiffs introduces into the contract another vessel, about which the insurer had no means of obtaining any knowledge, but which he is nevertheless to stand as insurer of, against the peril of collision from negligence. This is a fanciful rather than a just view of the subject. It might as well be said, that to hold the underwriter on a vessel liable for the loss of cargo by jettison, was to make him an insurer of the cargo without his knowledge or consent.
A considerable portion of the argument for the defendants assumes that the plaintiffs rely on the fact, that there is a lien in rem for damage by collision, as the foundation of their claim. This portion of the argument.it is not necessary to *495 consider, as the plaintiffs in fact contend that their claim would be equally good if no remedy in rem existed. The owners of the steamer might proceed against the ship or her owners at their pleasure, and it is wholly immaterial as to the liability of the underwriters, which form of remedy might be adopted. In either way the plaintiffs’ loss is the same, and their claim.on the underwriters the same. The fact that a lien was created by the collision, and thus reduced the value of the vessel insured,was used to illustrate and enforce the plaintiffs’ claim under their policy. The extent of the liability, which, it is said, would be imposed on underwriters if the plaintiffs’ claim is sustained, is also insisted on in the argument. Such a consideration cannot change the law. Besides ; the liability of the underwriter cannot of corase be extended beyond the sum insured.
The main ground of defence, however, relied on in the argument is, that there was negligence in the navigation of the plaintiffs’ ship ; that without this negligence the. plaintiffs would not have been obliged to pay for the damage done to the steamer; and therefore, that so far as respects the payment for damage to the steamer, the negligence was the proximate cause of the loss, and not the collision. Properly to estimate the force and value of this argument, it is necessary to inquire, who, in case of a loss arising from one of the perils insured against, is responsible for the conduct of the master or mariner in the practical navigation of the vessel.
It seems to have been formerly held, that underwriters were not responsible for losses, which happened in consequence of the negligence of the master or crew in the navigation of the ship. This doctrine would go far to deprive the assured of the benefit and protection of his policy, without any fault of his own, and would greatly lessen, if it did not destroy the usefulness of insurance. Some fault or negligence on the part of the master or mariners enters into almost every case of a loss or damage of a vessel at sea. The danger from such fault or negligence is one of the dangers, which the assured has most reason to apprehend, and against which he most needs and may reasonably expect protection.
*496 Besides; such a doctrine would be sure to involve the assured in perpetual controversies and litigation, in regard to the fact of negligence, whether there was or was not negligence, and what was the degree of the negligence, if any, and whether the loss was, or was not, in consequence of such negligence. These would be difficult and perplexing questions of fact, the decision of which would depend on many contingencies ; thus involving the rights of the assured in ruinous doubts and uncertainties. To avoid such evils and to give effect to the true meaning and intention of the parties, the modern decisions have established a different rule, and one much more in consonance with the principles and purposes of the contract of insurance. The great principle, now well established, is, that if the vessel, the master, officers, crew and equipments are competent and sufficient at the commencement of the voyage, the assured has done all that he contracted to do; he did not guaranty the faithfulness and vigilance of the master and crew, and he is not responsible for their negligence; but for the conduct of the master and mariners, in the practical navigation and management of the vessel, after the commencement of the voyage, the insurers are responsible, provided the actual loss arise from one of the perils insured against, though such peril may have occurred in consequence of the negligence or carelessness of the master and crew.
This rule of law is now perfectly well established, by the decisions in England, by the decisions of the supreme court of the United States, and by the courts of several of the states, and has been adopted by this court, in conformity with the decisions of the supreme court of the United States, that the decisions involving so important a practical principle might be uniform throughout the United States, and in conformity with the rule established in England. Busk v. Royal Exchange Assurance Co. 2 B. & Ald. 73; Walker v. Maitland, 5 B. & Ald. 171; Phillips v. Headlam, 2 B. & Ad. 380; Dixon v. Sadler, 5 M. & W. 405; Patapsco Ins. Co. v. Coulter, 3 Pet. 222; Columbia Ins. Co. v. Lawrence, 10 Pet. 507 ; Waters v. Merchants Louisville Ins. Co. 11 Pet. 213; Copeland v. New England Marine Ins. Co. 2 Met. 432; Perrin v *497 Protection Ins. Co. 11 Ohio, 147; Henderson v. Western M. & F. Ins. Co. 10 Rob. La. R. 164.
This doctrine does not rest on any principle of estoppel, that the defendants cannot go behind the peril to show the negligence, but that, under the circumstances stated, the underwriters are responsible for the negligence of the master and crew; and it is perfectly immaterial whether the fact of negligence is shown by the defendants, or is expressly set out and shown by the plaintiff as a part of his case; the principle remains the same, and the responsibility of the underwriters remains the same, by whichever party or in whatever form the fact of negligence is introduced into the case. When a peril insured against actually happens, all the negligence connected with it is at the risk of the underwriters, and all the consequences of the negligence fall upon them.
In the argument for the defendants, it is attempted to place the payment of the damage done to the steamer upon a different and distinct ground from the damage to the ship insured. It is not perceived that the use of the word tort, instead of negligence, adds any thing to its force. It is said, that the damage to the ship insured was the direct consequence of the collision by itself, and that the collision therefore is the proximate cause of that damage; but that the plaintiffs would not have been obliged to pay the damage to the steamer if there had not been negligence, and that that makes a difference. That is, that the plaintiffs would not have been liable to pay the damage to the steamer if there had not been negligence, and that therefore the. negligence is the proximate cause of the payment. Showing that negligence forms a necessary ingredient in the case falls very far short of showing that it is the proximate cause of the loss. If it follows, from the fact that the plaintiffs would not have been held to pay if there had not been negligence, that the negligence is the proximate cause of the payment, it may be shown, in precisely the same way, that the colisión was the proximate cause. If there had not been a collision, the plaintiffs would not have been liable to pay, and therefore the proximate cause of the payment is the collision. Yet the whole stress of the argument, to show that *498 the negligence was the proximate cause of this loss, rests on the proposition, that if there had not been negligence, the plaintiffs would not have been liable for the damage. Because the negligence was a necessary element in the case, it is attempted to set up the negligence as a distinct, substantive, proximate cause of the loss, putting the collision altogether out of sight, as quite unimportant.
To test the strength of the argument, it may be drawn out and stated more fully in the following general form: If the peril of the sea which operated in a given case was not of itself sufficient to occasion, and did not in and by itself occasion the loss claimed, if it depended upon the cause of that peril whether the loss claimed would follow it, and therefore a particular cause of the peril is essential" to be shown by the assured, then we must look beyond the peril to its cause to ascertain the efficient cause of the loss. It is believed that the above form of stating the argument sets out its full force and scope. A little change of the phraseology of the argument, so as to apply it to the present case, but without affecting at all its force, will show its" entire fallacy. Thus, if the negligence in this case was not of itself sufficient to occasion, and did not in and by itself occasion the loss claimed, if it depended upon the consequence of the negligence, that is the collision, whether the loss claimed would follow it, and therefore a particular consequence of the negligence is essential to be shown by the assured, then we must look beyond the negligence to its consequence, the collision,, to ascertain the efficient cause of the loss. This mode of reasoning, in whatever form it may be put, must prove, if it prove any thing, that there are two proximate causes; because there must always be both negligence and a collision; neither, in the absence of the other, would occasion the loss. This proves too much to be sound reasoning. Besides, this mode of reasoning directly begs the question. It assumes, at the outset, that the collision does not occasion the loss, and then jumps to the conclusion, that because the collision does not occasion the loss, the negligence does. But the true practical view of the subject, free from over-refinement and subtlety, *499 is very clear and intelligible. By the admiralty law, the owner of a vessel may or may not be liable for damage done by his vessel by a collision, according to the circumstances under which the collision takes place. If the collision happen in the absence of negligence, then the owner is not liable; if it happen under circumstances of negligence or by reason of negligence, then he is liable, liable for the collision and damage done by the collision, as the proximate cause. The negligence is an element in the case, but not the proximate cause of the loss. The negligence must of necessity be more remote than the collision; the collision follows as 1he consequence of the negligence; and the payment for the damage to the other vessel follows as the consequence of the collision, as its proximate cause. The payment is attached to the damage by the collision, and is commensurate with that damage ; it is not attached to the negligence, nor is it measured by the negligence. The negligence cannot be set up as a distinct, substantive, proximate cause of the payment, upon any other ground than that the payment was a penalty for the negligence; and if so, the penalty should be measured by the negligence, and exacted even though there should be no damage from the collision. But surely there was no penalty to be measured by the negligence, but the payment of the actual, carefully ascertained, damage caused by the collision, which is of course the proximate cause of the payment.
There are cases which proceed upon the ground, that the loss happened wholly from negligence, in the absence of any peril insured against, in which cases the underwriters, of course, are not held responsible. Such was the case of Hazard v. N. E. Marine Ins. Co. 1 Sumner, 218, where the loss was held to be from negligence, without any peril within the policy. There are other similar cases. It seems designed by the argument for the defendants, to place the present case on the same ground with those cases where the underwriters have been held not to be answerable for the loss, for the reason that it happened from negligence, without any peril within the policy. But this case does not come within that class. Here was clearly a peril insured against; and although *500 there was negligence, yet, as the law now stands, the underwriters take the risk of such negligence, and are answerable for the consequences of the peril as the proximate cause of the loss, notwithstanding the negligence, and that liability for negligence extends to the payment for damage to the steamer, as well as to the direct damage to the ship; upon perfectly well established principles, therefore, it seems plain that the underwriters are responsible for the loss claimed in this case.
But we are referred by the argument for the defendants to certain approved miters on maritime law abroad, who hold, it is said, an opposite doctrine. We have made some examination of those authors.
In France, it has been long well established, that under-miters are not liable for any loss arising from the misconduct or negligence of the master or crew of the vessel insured, and of course are not liable for any injury done by a collision occasioned by the fault of the master or crew of the ship insured. Pothier Contrat d’Assurance, § 50; Emerigon, c. 12, § 14; Boucher Droit Mar. 1501,1502; Code de Comm. § 213; 3 Pardessus Droit Comm. § 772.
This is directly opposed to both the English and American law, as now held. But even in France, by special provision in the policy, the undermiters may assume the risk of the fraudulent misconduct or negligence of the master and crew, the stipulation not being illegal. Pothier Contrat d’Assurance, § 65; Code de Comm. § 213. The French law, then, makes no difference between injuries done by a collision to the ship insured, owing to the negligence of the master or crew, and injuries done to the other ship. The undermiter cannot, under the common policy, be made to pay for either. But in case of a policy in France, so expressed as to protect against the consequences of the negligence of the master and men, I presume the undermiters would be held to pay in a case of collision, not only the expense of repairing the ship insured, but whatever sum her owners had to pay to the owners of the other vessel for damage done by the collision. I come to this conclusion from the consideration, that the French law does *501 not limit the liability of the underwriters to paying for damage to the ship insured, but extends it to the injury done to another vessel by collision. In such case, when it is impossible to ascertain where the fault really lies, the loss being equally divided between the two vessels, if the owner of the ship insured has, in this partition, to pay any thing to the owners of the other vessel, the underwriters are required to pay the owners of the vessel insured, not the expenses of repairing her merely, but whatever sum, in addition, the owner is required to pay toward repairing the other vessel. Emerigon, c. 12, § 14; 4 Boulay Paty, Droit Mar. (ed. 1823) 16.
In France, then, the principle is established, that an underwriter may have to pay for repairing an injury to a subject which he does not insure, in a case where the expense becomes a charge on the subject insured and its owner, arising out of a peril insured against. Indeed this is no more than the long established principle of general average, where the underwriter has to pay for a portion of the damage to a subject not insured, on the same ground that it is a charge on the subject insured and its owner, arising out of a peril covered by the policy.
So far as the argument for the defendants derives any support from the French law, that law is in direct conflict with our own, and cannot therefore have any force in this case.
But there are some adjudged cases which have a bearing on the present case, and must now be considered.
The case of De Vaux v. Salvador, 4 Ad. & El. 420, appears to have been a case of fault on both sides; each ship was damaged, and each ship had to bear half of the aggregate loss. In the settlement, the ship insured had to pay a balance to the other ship, and that suit was brought to recover of the underwriter the sum thus paid, and it was held, that the underwriter was not liable. Though that was a case of negligence, no such position in regard to negligence was taken as is taken in this case. The case was very summarily disposed of by the court as a new case, with very little reference to principles. It was said that the payment was made under the *502 rule of the court of admiralty; that it grew out “ of an arbitrary provision in the law of nations, from views of general expediency, not as dictated by natural justice, nor (possibly) quite consistent with it.” It is difficult to see how a rule, that in case of mutual fault, where it is impossible to measure accurately the effect of the fault of each party, the whole loss shall be borne equally by them, can be said to be inconsistent with natural justice. It was no doubt intended to be a just and equitable rule, and it would not be easy to prescribe a better or more equitable one. This payment was then compared to a penalty incurred by the contravention of the revenue laws of any particular state, rendered inevitable by perils insured against. The case supposed is quite too uncertain in itself, and quite too unlike the case in hand, to throw any light upon it. But this is in substance the whole explanation given of the decision, so far as relates to the question now under consideration. It is not necessary further to examine that case, as we consider its authority substantially overcome by the decision of the supreme court of the United States in the case of Peters v. Warren Ins. Co. 14 Pet. 99. That was a case where the plaintiffs’ vessel came in collision with another vessel wholly by accident, and without any fault on either side; both vessels suffered damage, and by the marine law of Hamburgh, to which the vessels were subject, each vessel had to bear one half of the whole aggregate loss of both vessels. Under that law, the plaintiffs had to pay an amount to the owners of the other vessel, they being the greatest sufferers, and that action was brought to recover the amount, so paid, of the underwriters on the plaintiffs’ vessel, and it was decided that the plaintiffs were entitled to recover the sum claimed. The case was fully argued, and a thorough and elaborate opinion delivered by the court. The decision did not depend at all on the fact, that there was no fault or negligence on either side, but was placed upon much broader ground. The whole argument of the court went to show, that a claim for a payment made to another vessel for damage done by collision stood upon precisely the same ground as a claim for damages done directly to the vessel insured. The *503 strong and conclusive reasoning of the court went to maintain the general proposition, that the collision was, upon general principles, and in all cases where the insured became liable to pay for damages done to another vessel, as much the proximate cause of such payments as of the immediate damage to the ship insured.
That that decision was intended to include, and does include, a case like the present, in which there is negligence in the navigation, is perfectly manifest. That the court did not consider that the fact, that the owner was obliged to make the payment by reason of there having been negligence in the navigation of his ship, would take a case out of the operation of their decision, is made certain by the fact, that they refer to the case of De Vaux v. Salvador, which was a case of negligence, as in direct conflict with their own decision. If a case in which there was negligence did not come within the scope of the decision in Peters v. Warren Ins. Co. then the court in that case would, no doubt, have treated the case of De Vaux v. Salvador, which was a case of negligence, as not in conflict with their decision, but as distinguished from the case before them, and standing on different ground. But there is no intimation that the two decisions can be reconciled; that they stand upon different principles; that the negligence in the case of De Vaux v. Salvador distinguished it from the case of Peters v. Warren Ins. Co., in which there was no negligence; but the two cases aré treated as in conflict, and the court dissent entirely from the decision in De Vaux v. Salvador, as “ in opposition to the analogies furnished by other acknowleged doctrines in the law of insurance.” But to put this matter beyond all controversy, Mr Justice Story, in the case of Hale v. Washington Ins. Co. 2 Story R. 176, expressly refers to the case of Peters v. Warren Ins. Co., as a case in point in support of a claim for a payment to which the party had been subjected by reason of negligence in the navigation of his ship. To hold now, that the case of Peters v. Warren Ins. Co. is not a case in point to support a claim like the present, to recover the amount which the plaintiffs were comoelled to pay for damage by collision which happened in con *504 sequence of the negligence of the master and crew in the navigation of his ship, would be a direct renunciation of the principle upon which the decision in that case was founded, and would be in fact saying, that Mr Justice Story did not correctly comprehend the scope of his own opinion, and that that case does not mean what he supposed it meant. Such a position must be wholly untenable.
The case of Hale v. Washington Ins. Co. 2 Story R. 176, already referred to, is also directly in point in support of the plaintiffs’ claim. In that case, the plaintiff sought to recover of the underwriters on his ship the amount he had been compelled to pay, under the rule in admiralty, for damage done to another vessel by a collision occasioned by the fault or mistake of the mate and crew of his own ship, and it was adjudged that he was entitled to recover the sum claimed. That case is like the present in all its material facts, and supports with all its weight the plaintiffs’ claim. The same learned counsel appeared for the defendants in that case who appears for the defendants in this case, and endeavored, in that case as in this, to show that the negligence, and not the collision, was the proximate cause of the loss; but the argument failed to convince the court. He endeavored also to distinguish the case of Peters v. Warren Ins. Co. from the case then in hearing, as he has endeavored to distinguish it from this case; but the distinction was not admitted by the court. That case was thoroughly examined by the court, and an elaborate opinion was delivered, the reasoning of which commands the entire assent of this court; and the great learning and high judicial character of the judge, his familiarity with the law of insurance, and his large judicial experience in administering that law, give to his decision great weight and authority.
The present case, therefore, has in its support both the cases of Peters v. Warren Ins Co. and Hale v. Washington Ins. Co., and this court sees no reason to disturb the law as settled by those decisions.
The circuit court of the United States for the Southern District of New York, in a recent case, have followed these decisions; Sherwood v. General Mut. Ins. Co. 1 Blatchf. Rep *505 251 ;* so that all the decisions upon this subject in this country are the same way. [See also Mathews v. Howard Ins. Co. 13 Barb. 234.]
In our judgment, both upon principle and authority, the proximate cause of the loss, which the plaintiffs sustained by being obliged to pay the amount of damage done to the steamer, was the collision; and this was a peril, against which the defendants insured, and for which they are responsible.
Unless the parties agree on the amount for which judgment shall be entered, the case will be sent to an assessor.
After this opinion was announced, judgment was entered by consent for the plaintiffs for the whole amount claimed.

 The judgment in that case was reversed in the supreme court of the United States, at the December term, 1852, Curtis. J. delivering the opinion. 14 How. 351.