## WILLIAM WATERS v. THE MERCHANTS' LOUISVILLE INSURANCE COMPANY.

Insurance. The Steamboat Lioness was insured on her voyages on the western waters, particularly from New Orleans to Natchitoches on Red river and elsewhere, "the Missouri and Upper Mississippi excepted," for twelve months. One of the perils insured against was, "fire." The vessel was lost by the explosion of gunpowder. "On the trial of the cause the judges of the circuit court of Kentucky were divided in opinion on the following questions, which were certified to this Court; 1. Does the policy cover the loss of the boat by a fire, caused by the barratry of the master? 2. Does the policy cover a loss of the boat by fire, caused by the negligence, carelessness, or unskilfulness of the master and crew of the boat, or any of them? 3. Is the allegation of the defendants in these pleas, or any of them, to the effect that the fire by which the boat was lost, was caused by the carelessness or unskilful conduct of the master and crew, a defence to this action? 4. Are the pleas of the defendant, or either of them, sufficient?"

A loss by fire, when the fire was directly and immediately caused by the barratry of the master and crew, as the efficient agents when the fire was communicated,—and occasioned by the direct act and agency of the master and crew, intentionally done from a barratrous purpose, is not a loss within the policy; if barratry is not insured against.

If the master or crew should barratrously bore holes in the bottom of a vessel, and she should thereby be filled with water and sink, the loss would properly be deemed a loss by barratry, and not by a peril of the seas or of rivers, though the water should co-operate in producing the sinking.

The doctrine as applied to policies against fire on land, has for a great length of time prevailed, that losses occasioned by the mere fault or negligence of the assured or his servants, unaffected by fraud or design, are within the protection of the policy; and as such are recoverable from the underwriters. This doctrine is fully established in England and America.

It is a well established principle of the common law, that in all cases of loss we are to attribute it to the proximate cause, and not to the remote cause. This has become a maxim to govern cases arising under policies of insurance.

In the case of the Columbia Insurance Company v. Lawrence, 10 Peters, 507, this Court thought that in marine policies, whether containing the risk of barratry or not, a loss, whose proximate cause was a peril insured against, is within the protection of the policy; notwithstanding it might have been occasioned, remotely, by the negligence of the master and mariners. The Court have seen no reason to change that opinion.

As the explosion on board the Lioness was caused by fire, the fire was the proximate cause of the loss.

If taking gunpowder on board a vessel insured against fire, was not justified by the usage of the trade and therefore was not contemplated as a risk by the policy; there might be great reason to contend, that if it increased the risk, the loss was not covered by the policy.

ON a certificate of division from the circuit court of the United States for the district of Kentucky.

The plaintiff, a citizen of the state of Louisiana, on the 12th day of September, 1832, caused insurance to be made by the Merchants' Louisville Insurance Company, at the city of Louisville, in the state of Kentucky, in the sum of six thousand dollars, on the steamboat Lioness, her engine, &c., to navigate the western waters usually navigated by steamboats, &c.; the assured having the privilege of placing competent masters in command at any time; the insurance to continue for twelve months, until 12th September, 1833.

The perils insured against, were those "of rivers, fire, enemies, pirates, assailing thieves, and all other losses and misfortunes which shall come to the hurt or detriment of the steamboat, her engine, tackle, and furniture, according to the true intent and meaning of the policy."

An action was instituted in the circuit court on this policy, by William Waters, the assured, to November term, 1836; and the plaintiff averred in the declaration an interest in the steamboat Lioness, at the time of the insurance, and up to her loss, of sixteen thousand dollars; that the said steamboat Lioness, her engine, tackle and furniture, after the execution of said policy, and before its termination, to wit, on the 19th of May, 1833, on Red river, about one mile below the mouth of Bon Dieu river, whilst she was on her voyage from New Orleans to Natchitoches, Louisiana, on Red river, were, by the adventures and perils of fire and the river, exploded, sunk to the bottom of Red river aforesaid, and utterly destroyed; so as to cause and make it a total loss. And the plaintiff averred, that said steamboat Lioness was, at the time of the explosion, sinking and destruction aforesaid, by the perils aforesaid, sufficiently found in tackle and appurtenances thereto, and completely provided with master, officers and crew, and in good order and condition, and perfectly sea-worthy.

The declaration also averred, that a regular protest of the manner in which the loss of vessel took place, was made; and the same, with proof of the plaintiff's interest, were delivered to the defendants.

To this declaration, the defendants filed the following pleas:—1. That the officers and crew of the Lioness, at the time of her explosion and sinking, so negligently and carelessly conducted themselves in managing and attending to the safety of the cargo on board, that

[Waters v. The Merchants' Louisville Insurance Company.]

the steamboat was, by means of fire negligently and carelessly communicated to gunpowder in the hold by the officers and crew, blown up and destroyed.

2. That the Lioness was loaded in part with gunpowder, and that the officers and crew, or some of them, carelessly and negligently carried a lighted candle or lamp into the hold where the powder was stored, and negligently handled the candle or lamp at the time that the powder was exploded; and thereby produced the explosion and destruction of the said steamer.

3. That the Lioness was in part loaded with gunpowder; and the same was so unskilfully, negligently, and carelessly stowed away in the boat, by the officers and crew, or some of them, that the gunpowder took fire by reason of the said unskilfulness, negligence, and carelessness; and the boat was consequently lost and destroyed by explosion.

4. That the Lioness received, and had on board a quantity of gunpowder at the time of the explosion, which increased the risk of the insurers, contrary to the true intent and meaning of the policy; by which the insurers were discharged from the obligations of the policy.

5. That the loss of the Lioness was caused by the officers and crew, or some of them, carelessly and negligently carrying a lighted candle or lamp into the hold; and so negligently or carelessly carrying the same, as the explosion of the vessel was thereby produced.

6. That the loss of the boat was caused by the conduct of the officers, managers and crew of the boat, in taking and receiving on board large quantities of gunpowder, and by carelessly keeping the same; in consequence of which the gunpowder became ignited while on board the boat, and by its explosion caused her loss and destruction.

To these pleas the plaintiff demurred; and the defendants joined in demurrer.

On the argument of the cause, the following questions and points occurred, upon which the judges of the circuit court were divided in opinion; and the same, at the request of the defendants, were stated, and ordered to be certified to this Court.

1st. Does the policy cover a loss of the boat by a fire, caused by the barratry of the master and crew?

2d. Does the policy of insurance cover a loss of the boat by fire,

caused by the negligence, carelessness, or unskilfulness of the master and crew of the boat, or any of them?

3d. Is the allegation of the defendants in their pleas, or either of them, to the effect that the fire by which the boat was lost, was caused by the carelessness, or the neglect, or unskilful conduct of the master and crew of the boat, a defence to this action?

4th. Are the said pleas, or either of them, sufficient?

The case was argued by Mr. Crittenden for the defendants; no counsel appeared for the plaintiff.

Mr. Crittenden said, as to the first question, the only inquiry that seems necessary to a satisfactory solution or answer to it, is, whether barratry is insured against by the policy.

Barratry is a peculiar and distinct risk, for which insurers are made responsible by express stipulation only; Grim v. Phœnix Ins. Comp. 13 Johns. Rep. 451. And, accordingly, in the common forms of marine policies it is always *expressly* embraced, and described by its appropriate and technical denomination, *Barratry.*

In this policy there is an *enumeration* of the risks, and barratry is not included. Its omission is equivalent, in legal interpretation, to its *express exclusion:* expressio unius est exclusio alterius.

The general clause in the policy, that follows the enumeration of the risks, to wit; "and all other losses and misfortunes," &c. has reference only to "losses and misfortunes" proceeding from the *enumerated risks;* and is not intended or to be construed as adding *other risks,* or *enlarging* the perils that the insurers are to bear. They are nothing more than words used out of abundant caution, to give full effect to the previously *enumerated risks;* for which alone the underwriters are responsible.

It may, therefore, we think, be safely assumed, that the policy, in this case, contains no insurance against *barratry;* and, we suppose it must follow, that if the defendants did not insure against barratry, they cannot be liable for a loss by fire, caused by barratry.

2dly, As to the other three questions, it is supposed that they will all be virtually settled by the decision of a single point; that is, whether the defendants, *there being no insurance against barratry,* are liable for a loss by fire, arising from the *negligence* of the assured, or his agents, the master and crew?

[Waters v. The Merchants' Louisville Insurance Company.]

The defendants contend for the negative of this question.

If there be one case, turning on that very point, in which such a liability has been adjudged to exist, we have not met with it. The liability of underwriters for such losses, where barratry also is included in the policy, is supposed to have been settled in England, as late as the year 1818, by the decision in the case of Busk v. The Royal Exchange Insurance Company, 2 Barnwall and Alderson, 72; and that decision was adopted and followed by this Court in the case of the Patapsco Insurance Company v. Coulter, at the January term, 1830, 3 Peters, 222; contrary to the case of Grim v. The Phœnix Insurance Company, 13 Johns. Rep. 451, and all the American cases on the same point.

But the English case, and the case in this Court, leave undetermined the question of liability where there is no insurance against barratry. In the latter case it is said, that question "need not here be considered;" and in the English case, the reasoning of the court to establish the liability, where barratry is insured against, is strong against the existence of any such liability, where there is no insurance against barratry. The court say, "where we find that they (the assurers) make themselves answerable for the wilful misconduct (barratry) of the master in other cases; it is not too much to say, that they meant to indemnify the assured against the fire, proceeding from the negligence of the master and mariners."

Thus, the undertaking to indemnify against the effects of negligence, is inferred, exclusively, from the express agreement to be answerable for barratrous conduct: an argument pregnant with the conclusion, that, but for the insurance against barratry, there would have been no responsibility on the insurers for a loss by negligence; and such, we insist, is the correct doctrine recognised and sanctioned by elementary writers, Marshall, 156, 421, and Philips 224 to 227; and by adjudged cases, Grim v. Phœnix Insurance Company, 13 Johns. Rep. 451; and the cases there cited, of Vos & Grayes v. The United Insurance Company, 2 Johns. Cases, 180; and Cleveland v. The Union Insurance Company, 8 Mass. Rep. 308, &c. &c.; Toulmin v. Inglis, 1 Campbell, 421; Pepon v. Cope, 1 Campbell, 434; Toulmin v. Anderson, 1 Taunton, 227; and Boyd v. Dubois, 3 Campbell, 133; the case of Phyn v. The Royal Exchange Association Company, 7 Term Rep. 505; and many other cases, proceed on the same principle.

It is admitted that the doctrine for which the defendants, in this

case, contend, is, seemingly, in opposition to some remarks that fell from this Court in the late case of the Columbia Insurance Company of Alexandria v. Lawrence, 10 Peters, 507. It is respectfully suggested that those remarks (entitled in all other respects to the highest consideration) related to a point not involved in the case, or necessary to its determination; and were, probably, therefore, less weighed and considered by the Court. The point was not involved, because that was an insurance of a house against fire; and, in such cases, the books and authorities all seem to concur, in holding the insurer responsible for losses occasioned by the negligence of servants; in contradistinction to the responsibility resulting from marine policies. It is hoped, therefore, that the question now under consideration, may be regarded as an open one; neither conclu ed nor affected by what fell from the Court, in the case last mentioned.

Furthermore, the rule for which we contend, exempting insurers from liability for the negligence of the assured and his agents, is supported by its analogy to the familiar and well-established doctrines applicable to bailments generally; and is sanctioned by reason and sound policy, as contributing to the general interest and security, by rendering the assured and their agents more diligent and more careful.

Mr. Justic STORY delivered the opinion of the Court.

This is a case certified to us from the circuit court for the district of Kentucky upon certain questions upon which the judges of that court were opposed in opinion.

The action was brought by Waters, the plaintiff, on a policy of insurance underwritten by the Merchants' Louisville Insurance Company, whereby they insured and caused to be insured, the plaintiff "lost or not lost, in the sum of 6000 dollars, on the steamboat Lioness, engine, tackle, and furniture, to navigate the western waters usually navigated by steamboats, particularly from New Orleans to Natchitoches on Red river, or elsewhere, the Missouri and Upper Mississippi excepted; (captain Waters having the privilege of placing competent masters in command at any time, 6000 dollars being insured at New Albany, Indiana) whereof William Waters is at present master; beginning the adventure upon the said steamboat, from the 12th of September, 1832, at twelve o'clock meridian, and to continue and endure until the 12th of September, 1833, at twelve o'clock, meridian (twelve months)." The policy further

provided, that "It shall be lawful for the said steamboat, during said time, to proceed to, touch and stay at, any point or points, place or places, if thereunto obliged by stress of weather or other unavoidable accidents, also at the usual landings for wood and refreshments, and for discharging freight and passengers, without prejudice to this insurance. Touching the adventures and perils, which the aforesaid insurance company is contented to bear; they are, of the rivers, fire, enemies, pirates, assailing thieves, and all other losses and misfortunes, which shall come to the hurt, detriment, or damage of the said steamboat, engine, tackle, and furniture, according to the true intent and meaning of this policy." The premium was nine per cent. The declaration avers a total loss; and that the said steamboat and appertenances insured, "were, by the adventures and perils of fire and the river, exploded, sunk to the bottom of Red river aforesaid, and utterly destroyed."

The defendants pleaded six several pleas, to which a demurrer was put in by the plaintiff; and in the consideration of the demurrer, the following questions and points occurred:

1. Does the policy cover a loss of the boat by a fire, caused by the barratry of the master and crew?

2. Does the policy cover a loss of the boat by fire, caused by the negligence, carelessness, or unskilfulness of the master and crew of the boat, or any of them?

3. Is the allegation of the defendants in their pleas, or either of them, to the effect that the fire, by which the boat was lost, was caused by the carelessness, or the neglect, or unskilful conduct of the master and crew, a defence to this action?

4. Are the said pleas, or either of them, sufficient?

These questions constituted the points on which the decision of the judges took place in the court below; and they are those upon which we are now called to deliver our opinion upon the argument had at the bar.

As we understand the first question, it assumes that the fire was directly and immediately caused by the barratry of the master and crew, as the efficient agents; or, in other words, that the fire was communicated and occasioned by the direct act and agency of the master and crew, intentionally done from a barratrous purpose. In this view of it, we have no hesitation to say, that a loss by fire caused by the barratry of the master or crew, is not a loss within the policy. Such a loss is properly a loss attributable to the barratry, as its

proximate cause, as it concurs as the efficient agent, with the element, eo instanti, when the injury is produced. If the master or crew should barratrously bore holes in the bottom of the vessel, and the latter should thereby be filled with water and sink, the loss would properly be deemed a loss by barratry, and not by a peril of the seas or of rivers, though the flow of the water should co-operate in producing the sinking.

The second question raises a different point, whether a loss by fire, remotely caused by the negligence, carelessness, or unskilfulness of the master and crew of the vessel, is a loss within the true intent and meaning of the policy. By unskilfulness, as here stated, we do not understand in this instance, a general unskilfulness, such as would be a breach of the implied warranty of competent skill to navigate and conduct the vessel; but only unskilfulness in the particular circumstances remotely connected with the loss. In this sense, it is equivalent to negligence or carelessness in the execution of duty, and not to incapacity.

This question has undergone many discussions in the courts of England and America, and has given rise to opposing judgments in the two countries. As applied to policies against fire on land, the doctrine has for a great length of time prevailed, that losses occasioned by the mere fault or negligence of the assured or his servants, unaffected by fraud or design, are within the protection of the policies; and as such recoverable from the underwriters. It is not certain upon what precise grounds this doctrine was originally settled. It may have been from the rules of interpretation applied to such policies containing special exceptions, and not excepting this; or it may have been, and more probably was founded upon a more general ground, that as the terms of the policy covered risks by fire generally, no exception ought to be introduced by construction, except that of fraud of the assured, which, upon the principles of public policy and morals, was always to be implied. It is probable, too, that the consideration had great weight, that otherwise such policies would practically be of little importance, since, comparatively speaking, few losses of this sort would occur which could not be traced back to some carelessness, neglect, or inattention of the members of the family.

Be the origin of it, however, what it may, the doctrine is now firmly established both in England and America. We had occasion to consider and decide the point at the last term, in the case of the

Columbia Insurance Company of Alexandria v. Lawrence, 10 Peters' R. 517, 518; which was a policy against the risk of fire on land. The argument addressed to us on that occasion, endeavoured to establish the proposition, that there was no real distinction between policies against fire on land and at sea; and that in each case the same risks were included: and that as the risk of loss by fire occasioned by negligence was not included in a marine policy, unless that of barratry was also contained in the same policy, it followed, that as the latter risk was not taken on a land policy, no recovery could be had. In reply to that argument, the court made the comments which have been alluded to at the bar, and the correctness of which it becomes now necessary to decide.

It is certainly somewhat remarkable, that the question now before us should never have been directly presented in the American or English courts; viz. whether, in a marine policy, (as this may well enough be called) where the risk of fire is taken, and the risk of barratry is not, (as is the predicament of the present case) a loss by fire, remotely caused by negligence, is a loss within the policy. But it is scarcely a matter of less surprise, considering the great length of time during which policies against both risks have been in constant use among merchants; that the question of a loss by negligence in a policy against both risks, should not have arisen in either country until a comparatively recent period.

If we look to the question upon mere principle, without reference to authority, it is difficult to escape from the conclusion, that a loss by a peril insured against, and occasioned by negligence, is a loss within a marine policy; unless there be some other language in it, which repels that conclusion. Such a loss is within the words, and it is incumbent upon those who seek to make any exception from the words, to show that it is not within the intent of the policy. There is nothing unreasonable, unjust, or inconsistent with public policy, in allowing the insured to insure himself against all losses from any perils not occasioned by his own personal fraud. It was well observed by Mr. Justice Bayley, in delivering the opinion of the court in Bush v. The Royal Exchange Assurance Company, 2 Barn. and Ald. 79; after referring to the general risks in the policy; that "the object of the assured, certainly, was to protect himself against all the risks incident to a marine adventure. The underwriter being therefore liable, prima facie, by the express terms of the policy, it lies upon him to discharge himself. Does he do so by showing that the

fire arose from the negligence of the master and mariners?" "If, indeed, the negligence of the master would exonerate the underwriter from responsibility, in case of a loss by fire; it would also in cases of a loss by capture, or perils of the sea. And it would, therefore, constitute a good defence in an action upon a policy, to show, that the captain had misconducted himself in the navigation of the ship, or that he had not resisted an enemy to the utmost of his power." There is great force in this reasoning, and the practical inconvenience of carving out such an implied exception from the general peril in the policy, furnishes a strong ground against it; and it is to be remembered, that the exception is to be created by construction of the court, and is not found in the terms of the policy. The reasons of public policy, and the presumption of intention in the parties to make such an exception, ought to be very clear and unequivocal, to justify the court in such a course. So far from any such policy or presumption being clear and unequivocal, it may be affirmed that they lean the other way. The practical inconvenience of creating such an exception would be very great. Lord Tenterden alluded to it in Walker v. Maitland, 5 Barn. & Ald. 174. "No decision (said he) can be cited, wherein such a case (the loss by a peril of the sea,) the underwriters have been held to be excused in consequence of the loss having been remotely occasioned by the negligence of the crew. I am afraid of laying down any such rule. It will introduce an infinite number of questions, as to the quantum of care, which, if used, might have prevented the loss. Suppose, for instance, the master were to send a man to the mast head to look out, and he falls asleep, in consequence of which the vessel runs upon a rock, or is taken by the enemy; in that case it might be argued, as here, that the loss was imputable to the negligence of one of the crew, and that the underwriters are not liable. These, and a variety of other such questions, would be introduced, in case our opinion were in favour of the underwriters." His lordship might have stated the argument from inconvenience, even in a more general form. If negligence of the master or crew, were under such circumstances a good defence, it would be perfectly competent and proper to examine on the trial any single transaction of the whole voyage, and every incident of the navigation of the whole voyage, whether there was due diligence in all respects, in hoisting or taking in sail, in steering the course, in trimming the ship, in selecting the route, in stopping in port, in hastening or retarding the operations of the

voyage; for all these might be remotely connected with the loss. If there had been more diligence, or less negligence, the peril might have been avoided of escaped, or never encountered at all. Under such circumstances, the chance of a recovery upon a policy for any loss, from any peril insured against, would of itself be a risk of no inconsiderable hazard.

This is not all: we must interpret this instrument according to the known principles of the common law. It is a well established principle of that law, that in all cases of loss we are to attribute it to the proximate cause, and not to any remote cause: causa proxima non remota spectatur: and this has become a maxim, not only to govern other cases; but, (as will be presently shown) to govern cases arising under policies of insurance. If this maxim is to be applied, it disposes of the whole argument in the present case; and why it should not be so applied we are unable to see any reason.

Let us now look to the authorities upon the point. In Busk v. The Royal Exchange Assurance Company, 2 Barn. & Ald. R. 73, the very point came before the court. The policy covered the risk by fire, and the question made was, whether the fact that the loss of the ship by fire, occasioned by the negligence of the crew, was a good defence. The court held that it was not. In that case the policy also included the risk of barratry; and it is now said that the decision of the court turned wholly upon that consideration, the court being of opinion, that in a policy, where the underwriter takes the superior risk of barratry, there is no ground to infer that he does not mean to take the inferior risk of negligence: it is certainly true that the court do rely in their judgment upon this circumstance; and it certainly does fortify it. But there is no reason to say, that the court wholly relied upon it, and that it constituted the exclusive ground of the judgment; on the contrary, Mr. Justice Bayley, in delivering the opinion, takes pains in the earlier part of that opinion to state, and to rely upon the maxim already stated. He said, "in our law, at least, there is no authority which says that the underwriters are not liable for a loss, the proximate cause of which is one of the enumerated risks; but the remote cause of which may be traced to the misconduct of the master and mariners." "It is certainly a strong argument against the objection now raised for the first time, that in the great variety of cases upon marine policies, which have been the subjects of litigation in courts of justice, (the facts of many of which must have presented a ground for such a de-

fence) no such point has ever been made." In Walker v. Maitland, 5 Barn. and Ald. 173, a similar question was presented, where the maxim was still more strongly indicated, as the general, though not as the exclusive ground of the judgment: the case of Bishop v. Pentland, 7 Barn. and Cresw. 219, turned exclusively upon the very ground of the maxim; and not a single judge relied upon the policy, as containing the risk of barratry. Indeed, it does not appear that the risk of barratry was, in that case, in the policy. Mr. Justice Bayley, on that occasion, put the former cases as having been expressly decided upon this maxim. His language was, "the cases of Busk v. The Royal Exchange Assurance Company, and Walker v. Maitland, establish as a principle that the underwriters are liable for a loss, the proximate cause of which is one of the enumerated risks; though the remote cause may be traced to the negligence of the master and mariners."

Then came the case of The Patapsco Insurance Company v. Coulter, 3 Peters' R. 222, where the loss was by fire, and barratry also was insured against. The Court on that occasion held, that in such a policy, a loss which was remotely caused by the master or the crew, was a risk taken in the policy; and the doctrine in the English cases already cited, was approved. It is true that the Court lay great stress on the fact that barratry was insured against; but it may also be stated that this ground was not exclusively relied on, for the Court expressly refer to and adopt the doctrine of the English cases, that the proximate and not the remote cause of a loss is to be looked to. It is known to those of us who constituted a part of the Court at that time, that a majority of the judges were then of opinion for the plaintiff, upon this last general ground, independently of the other.

It was under these circumstances, that the case of The Columbia Insurance Company of Alexandria v. Lawrence, 10 Peters' R. 507, came on for argument: and the Court then thought, that in marine policies, whether containing the risk of barratry or not, a loss whose proximate cause was a peril insured against, is within the protection of the policy; notwithstanding it might have been occasioned remotely by the negligence of the master and mariners. We see no reason to change that opinion; and on the contrary, upon the present argument, we are confirmed in it.

The third and fourth questions are completely answered by the reasoning already stated. Those pleas contain no legal defence to the action, in the form and manner in which they are pleaded; and are not sufficient to bar a recovery by the plaintiff.

[Waters v. The Merchants' Louisville Insurance Company.]

Some suggestion was made at the bar, whether the explosion, as stated in the pleas, was a loss by fire, or by explosion merely. We are of opinion, that as the explosion was caused by fire, the latter was the proximate cause of the loss. The fifth plea turns upon a different ground. It is that the taking of gunpowder on board was an increase of the risk. If the taking of the gunpowder on board was not justified by the usage of the trade, and therefore was not contemplated as a risk by the policy; there might be great reason to contend, that if it increased the risk, the loss was not covered by the policy. But in our opinion the facts are too defectively stated in the fifth plea, to raise the question.

Our opinion will be certified to the circuit court accordingly. On the first question, in the negative; on the second question, in the affirmative; and on the third and fourth questions, in the negative.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and on the questions and points on which the judges of the said circuit court were opposed in opinion, and which were certified to this Court for its opinion, agreeably to the act of congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this Court, 1st, that the policy does not "cover a loss of the boat by a fire, caused by the barratry of the master and crew;" 2d, that the policy does "cover a loss of the boat by fire, caused by the negligence, carelessness or unskilfulness of the master and crew of the boat, or any of them;" 3d, that the allegations of the defendants in their pleas, or either of them to the effect that the fire, by which the boat was lost, was caused by the carelessness, or the neglect, or unskilful conduct of the master and crew of the boat, "is not a defence to this action; and 4thly, that the said pleas, or either of them," are not sufficient in law as a bar to the action of the plaintiff. Whereupon it is now here ordered and adjudged by this Court, that it be so certified to the said circuit court.