## Fireman's Insurance Company *vs.* Powell.

### ERROR TO LOUISVILLE CHANCERY COURT.

Judge SIMPSON delivered the opinion of the court.

CHANCERY.

Case 34.

October 12.

1. Where there has been a mistake in a policy of insurance, a court of chancery has jurisdiction to correct the mistake and grant the appropriate relief, if the policy has been broken.

2. A policy did not *expressly* insure against loss or injury from grounding, but provided that "the assured were not to abandon as for a total loss on account of the steamboat grounding, or being otherwise detained"—held that as grounding was one of the perils to which steamboats were liable, and it was not excepted, that it was included and insured against in this policy.

3. If the policy be in force when the injury complained of occurred, it will cover expenditures made afterwards, which were proper and necessary for the protection of the property.

4. The negligence of the master and crew of steamboat, not amounting to barratry, will not release the insurer; such officers are, to some extent, the agents of the insurers. (11 *Peters*, 213; 11 *Ohio*

*Rep.* 147! 8 *Meason & Welby*, 895; 14 *Serg. & Lowb.* 130; 7 *Barn. & Cres.* 219.)

5. One who gives his bond for the delivery of a steamboat, which had been attached, thereby acquires such an interest as he may have insured.

Case stated.

The steamboat Mohawk having been seized by virtue of an attachment that issued from the Louisville chancery court, at the suit of a part of the owners against the others, the defendants executed a bond in the penalty of $16,000, conditioned to have the boat forthcoming to abide the decree that the court might render in the cause, with Thomas Powell as one of their sureties.

The boat was continued in business at the risk and hazard of the bondsmen, they being jointly and severally bound to have her forthcoming according to the stipulations of the bond. Powell the surety obtained from the Fireman's Insurance Company of Louisville a policy to protect himself against the perils ordinarily insured against, having fully apprized the company of his relation to the boat and his responsibility on account thereof. The policy was obtained during the existence of Powell's liability as surety; it was to continue three months, and insured the boat to the extent of $4,000. It contained a stipulation that no insurance was to be effected, during its continuance, exceeding the sum of eight thousand dollars. By the agreement of the parties the boat was valued at $18,-000, and it was provided that in case of any loss or misfortune it should be the duty of the insured, his factors and servants, to labor and travel for and about the defense, safeguard, and recovery of the said steamboat, without prejudice to the insurance, to the charges whereof the insurers agreed to contribute in the proportion the sum insured bore to the whole risk.

While the policy was in force, the boat, on a trip from New Orleans to Louisville, struck a bar in the Mississippi river, and the water, which was very high at the time, having shortly afterwards receded, left it on the bar, where it remained for some months, although strenuous efforts were made to get it afloat,

which was only ultimately effected by launching.—
The cost and expenses incurred in removing the boat
from the bar and in the unavailing efforts that were
made for that purpose, together with such as were
necessary for its preservation in the meantime, and
the repair of the injury it sustained, amounted in the
aggregate to a sum exceeding ten thousand dollars.

Powell having incurred this expenditure, to enable
him to comply with the condition of the bond which
required him to deliver the boat at Louisville to satis-
fy the decree of the court, a decree having been ren-
dered in the suit which made it necessary that the
boat should be forthcoming, and he having complied
with the decree, claimed from the underwriters the
payment of their proportion of the loss, and brought
this suit in chancery against them asserting the claim.

To sustain the jurisdiction of the court, he alleged
a mistake in the policy, consisting in a prohibition of
any insurance beyond the sum of $8,000 altogether,
during its continuance; the agreement of the parties
having been, that an insurance might be effected to
the amount of twelve thousand dollars, including the
four thousand dollars insured by the defendants.—
The mistake is admitted, but the defendants insist
that its existence does not impart any jurisdiction to
the court, because they say that the mistake was
never denied, and would at any time have been cor-
rected by them upon application, but none was ever
made.

They also resist the complainant's right to relief on
various grounds, if the jurisdiction of the court be
sustained.

1. That the loss incurred was not occasioned by
any of the perils insured against, but on the contrary
by one for which the insurers were exempted from all
liability by the express provisions of the policy.

<span style="float:right">Defence set up by defend-ants.</span>

2. The greater part of the outlay was made sub-
sequent to the expiration of the time that the policy
was to continue, and would not constitute a part of

FIREMAN'S IN.
COMPANY
vs.
POWELL.

the liability of the defendants, if they were liable at all for any part of the loss.

3. That the master and officers of the boat were engaged in racing at the time the boat was grounded on the bar, and deviated from the common and usual route, with a view to save time, without any regard to the safety of the boat, and the loss was occasioned by such misconduct, and the willful negligence of the officers and crew.

I. Where there has been a mistake in a policy of insurance, a court of chancery has jurisdiction to correct the mistake and grant the appropriate relief, if the policy has been broken.

As a mistake had occurred in executing the policy, no suit at law could have been maintained upon the actual agreement of the parties, and consequently it became necessary to resort to a court of chancery to correct the mistake, and to obtain the benefit of the insurance made by the defendants. The complainant's demand was resisted, and as he had to resort to the appropriate tribunal to enforce it, and could not have relied upon the existence of the mistake in a suit at law, he had a right to come into a court of equity for relief. It was not necessary in order to impart jurisdiction to the court, to allege that the defendants refused to admit or correct the mistake in the terms of the policy; it was sufficient to allege that the mistake existed, and then appeal to the conscience of the defendant for an admission of the fact. The complainant having made such an allegation, and its truth having been admitted, the court had jurisdiction to decree such relief as the complainant was entitled to, if any, more especially as the defendants did not pretend that they had offered to correct the mistake before the suit was commenced.

2. A policy did not expressly insure against loss or injury from grounding, but provided that "the assured were not to abandon as for a total loss on account of the

1. Was the loss occasioned by one of the perils insured against? The object of the insurance was to guard against the usual and ordinary perils of steamboat navigation. By the terms of the policy the insurance company were to bear such losses and misfortunes as should occur, to the detriment or damage of the steamboat insured, from the perils of the rivers, fire, pirates, assailing thieves, &c.; but were not to be liable for any loss or damage which might arise

from, or be occasioned by, the boat being unduly laden, (that is its guards were to be clear of water when lying still,) nor from any loss arising from the explosion of gunpowder, the bursting of boilers, the collapsing of the flues, or breaking of the engine, or any part thereof except from unavoidable external cause or causes. The grounding of the boat on a bar is not one of the excepted cases, and as it is one of the dangers to be encounteted in the navigation of the western rivers, it was embraced by the policy according to its true intent and meaning. But it was stipulated in the policy that the assured were not to abandon, as for a total loss, on account of the steamboat grounding, or being otherwise detained; and hence it is contended, that grounding is a peril not covered by the policy, or in other words that it is excepted out of the enumerated risks. This stipulation does not authorize such a deduction. If the risk were one not covered by the policy, there was no necessity for the stipulation, and its insertion proves most conclusively that grounding was one of the perils insured against. Hence the propriety of the limitation on the rights of the insured, in such a contingency, to abandon as for a total loss. This qualification of the right of abandonment was unnecessary, if the position assumed by the underwriters be correct. As there would exist no liability for the loss, it was immaterial, so far as the insurers were concerned, whether the loss were total or partial. But as grounding seldom results in a total loss, and frequently occasions no damage except that which arises from the detention, and the extent of the loss cannot be ascertained until the vessel be got afloat, there was an evident propriety in requiring the assured to remain in the possession of the boat, for its protection and preservation, and for the purpose of getting it off, with as much expedition as practicable. The risk then must be regarded as one that was covered by the policy.

FIREMAN'S IN.
COMPANY
vs.
POWELL.

steamboat grounding, or being otherwise detained"--held that as grounding was one of the perils to which steamboats were liable, and it was not excepted, that it was included and insured against in this policy.

3. If the pol-
icy be in force
when the injury
complained of
occurred, it will
cover expendi-
tures made af-
terwards, which
were proper and
necessary for
the protection
of the property.

2. Although a considerable part of the expendi-
ture that was incurred in re-launching the boat was
made after the policy had expired, yet it was occa-
sioned by the event which happened whilst the policy
was in force, and was not augmented by anything
that subsequently occurred. The expenditure actual-
ly made is only evidence of the damage sustained by
the assured, and so far as it may be looked to for that
purpose, it is not material whether it was made during
the continuance of the policy or afterwards. But it
is argued that there was no loss by the mere ground-
ing, and that the boat was not thereby injured. The
boat may not have been injured to any great extent
by this occurrence, but the owners were, for it is ap-
parent that to render the boat valuable, it was neces-
sary to place it back again in its proper element, and
whatever outlay was required to effect that object,
and repair the injury to it, was the loss sustained by
the assured. This loss was incurred when the boat
grounded, although its extent was not then ascertain-
ed, but depended upon future developments. As the
loss occurred, however, before the policy expired, it is
not material that its extent was not known until a
subsequent period.

3. By the express terms of the policy, it was agreed
on the part of the assured, that the steamboat was to
be competently provided with masters, officers, and
crew; and should the assured change the master, no-
tice thereof was to be given without delay, when the
assurers might end the adventure if they so elected,
by returning a *pro rata* share of the premium. A
change of the master was shortly thereafter made
with the assent of the assurers, and the master so sub-
stituted in the place of the former one, was in the
command of the boat when she ran upon the bar.
The pilot who was then at the wheel was proved to
be entirely competent to the station, a man of ex-
perience in the business, who had been engaged for
many years as a pilot in navigating the Mississippi
river, and generally regarded as one of the best pilots

upon the river. The proof shows that, in every respect, the boat was competently provided with master, officers, and crew. She was ascending the river when she grounded, and was, according to the weight of the testimony, out of the usual and ordinary channel for boats of her class. Some few years previously boats of all sizes were in the habit of navigating that part of the river where she grounded, but the bar having increased in height, the channel had changed, and produced a corresponding change among a large majority of the boats in the direction taken by them to pass that part of the river. The pilot, however, proves that he was induced to take that direction from having piloted the same boat in safety and without any difficulty, through that part of the river on two different occasions just previously, but that he happened to miss the channel, on the last occasion by a few yards, and ran the boat upon the bar. A number of witnesses testify that the accident was one that the most prudent and skillful pilot is liable to encounter, whilst a number testify on the other side that it must have resulted from the carelessness and negligence of the pilot at the wheel. While we incline to the opinion that a very prudent man would have avoided the risk, by pursuing that channel in the river which is abundantly proved to have been, at that time, the usual and ordinary route navigated by steamboats, yet we are not brought to the conclusion by an examination of the testimony that the grounding was occasioned either by the recklessness or negligence of the pilot. He had passed over that part of the river a short time previously without experiencing any difficulty; and might have thought himself justified in making the attempt again, under the belief no doubt entertained by him that he could do it without risk or danger. An effort has been made to prove that the boat was racing, and that the accident occurred in consequence of a desire to shorten the distance by leaving the usual channel in the river, and running in one more direct but more hazardous. It

FIREMAN'S IN.
COMPANY
*vs.*
POWELL.

does not, however, appear from the testimony that one route was more circuitous than the other, or that one could be passed over in a shorter time than the other, so that the testimony does not seem to authorize the inference that the route was selected with a view to shorten the distance and save time. Besides, it was proved that some other steamboats continued to navigate the same part of the river up to the time that the Mohawk grounded on the bar, and thus it is shown that although it was not the usual and ordinary route, yet that it had not been entirely abandoned, but was still occasionally used. With respect to the boat's racing at the time the accident occurred, it appears that the captain made one or two bets, before he left New Orleans, that the Mohawk would arrive at the port of Louisville in a shorter time than the steamboat Belle Key, that was to leave on the following day for the same port. But it is also shown, that the boat, until the time she grounded, had landed and remained the usual length of time at several points, and done the ordinary way business, so that the fair inference is, that the bets made on the two boats, had reference to the time in which the voyage that was to be conducted in the usual manner would be completed by them respectively; and there is nothing tending to show that this betting contributed in any degree to the accident that happened to the boat.

But if it be conceded that the grounding of the boat was occasioned by the negligence or misconduct of the master and crew, it would not follow that the loss is not covered by the policy. If the misconduct had been wilful and fraudulent, or the negligence so gross as to bear a fraudulent character, it would amount to barratry, and the insurers would not be responsible for the loss, unless the policy covered the risk of barratry. The assured is bound to provide in the outset a competent master and crew, but such master and crew, when once provided, are to some extent the agents of the underwriters as well as of the assured in relation to their conduct in the navi-

4. The negligence of the master and crew of steamboat, not amounting to barratry, will not release the insurer; such officers are, to some extent, the agents of the insurers. (11 *Peters*, 213; 11 *Ohio Rep.* 147; 8 *Meason & Welby*, 895; 14 *Serg. & Lowb.* 130; 7 *Barn. & Cres.* 219.)

gation of the boat, and if a loss occur in consequence of their negligence, or other misconduct which does not amount to barratry, the underwriters cannot impute the fault to the assured, who performed his duty in providing a competent master and crew in the first instance. The loss in this case was directly occasioned by one of the perils insured against. If its remote cause was the mistake or imprudence of the pilot, who had the management of the boat at the time, the fault is not attributable to the assured, and there is no good reason why it should not be covered by the policy. Barratry is itself regarded as a peril, and is not covered by a policy in which it is not expressly insured against. Not so however with respect to mere negligence or misconduct not amounting to barratry, and therefore the underwriters are liable for a loss by any of the perils in the policy of which such negligence or misconduct may be the remote cause.

Opposite opinions upon this point have been expressed by different courts, and for a time it was regarded as a vexed question; but the weight of modern authority, as well as the force of argument, seems to us to sustain decidedly the position we have assumed. (*Waters* v. *Merchants' Louisville Insurance Company*, 11 *Peters*, 213; *Perrin* v. *Protection Insurance Company*, 11 *Ohio*, 147; *Sadler* v. *Dixon*, 8 *Mees. & Wel.* 895; *Shore* v. *Bentall,* 14 *Serg. & Lowb.* 130 n; *Bishop, &c.* v. *Pentland*, 7 *B. & C.* 219.)

It is, however, argued that the loss was occasioned by a deviation, and therefore it is not covered by the policy. A deviation ordinarily consists in the doing of some act by which the risks insured against are changed without necessity or reasonable cause. The policy in this case contained an insurance upon the steamboat Mohawk for the term of three months, to navigate the western rivers usual for steamboats of her class, except the Missouri and Arkansas, Red river above Alexandria, and the Mississippi river above the foot of the lower rapids. Had the boat made a voyage out of the limits prescribed in the pol-

icy, it would have been a deviation; and if a loss had occurred, the underwriters would not have been responsible for it. Whether any act would amount to a deviation whilst the boat was navigated within the prescribed limits, we do not deem it necessary to decide. The doctrine upon the subject of deviation has arisen and been generally applied in cases where the insurance was on a particular voyage. Here the insurance was not upon a voyage from one port to another, but upon the navigation of certain designated rivers for a fixed period. The rules applicable in the former case, would seem to have but little application in the latter. But if an act can be committed in navigating the rivers covered by the policy, which, by varying the risks insured against, would amount to a deviation, and discharge the underwriters from liability for a loss occasioned thereby, it would not consist merely, as in this case, in going out of the direct and usual channel of navigation, and attempting to pass over a less frequented but nevertheless navigable part of the river. If a boat were run into a part of the river known not to be navigable, and where boats never ventured, the risk incurred might be considered as one not contemplated by the parties, and the loss, if one happened, as one for which the underwriters were not liable. And if the act were done without any reasonable cause or apparent necessity, it might amount to barratry, as it would furnish at least *prima facie* evidence of willful and fraudulent misconduct on the part of the officers of the boat. But the act complained of here consisted merely in taking the least frequented route, one however that the same pilot had passed safely along several times during the same season, and in which the grounding of the boat was entirely accidental, it being manifest from the proof that the boat could, in the then stage of the water, have passed the bar safely within a few yards of the place where she grounded. This act, therefore, did not amount to a deviation, and the loss was one for which the underwriters were accountable.

But it is contended that Powell was not legally one of the owners of the boat, and could not bring this suit against the insurance company in his own name. As he was bound for the forthcoming of the boat, he had an interest in its preservation and although, as one of the bondsmen he did not acquire, by the assumption of that liability, any right of property in the boat either legal or equitable, yet he had such an interest in its safety as authorized him to insure it against the perils of the river; and as he obtained the policy in his own name, having first disclosed to the insurers his relation to the boat and his responsibility on account thereof, he clearly had a right to sue in his own name upon a policy which he had taken in his own name and for his own benefit. And as it appeared that he had paid all the money which had been expended in consequence of the loss sustained by the grounding of the boat, he was alone entitled to that portion of it which the underwriters were bound to contribute by the terms of the policy. Whether he made the proper parties to his bill or not, we will not inquire, inasmuch as the want of proper parties is an objection to the proceedings not made by the assignment of errors.

It is also insisted that the boat was abandoned by the master in violation of the express agreement of the parties, as set forth in the policy, and that by such abandonment the policy was avoided. The fact however appears to be, that the master went to Louisville to advise the owners and underwriters of the true condition of the boat, and to consult with them as to the best plan to be adopted for its security, and to get it afloat; as well as to procure money and supplies to enable him to prosecute the object contemplated to a successful termination. The vessel was not abandoned, nor any means left untried, which promised to extricate it from its perilous position. It was by the unremitting exertions of its officers, that the boat was saved from entire destruction, and although the re-launching of it at an earlier period than

FIREMAN'S IN. COMPANY vs. POWELL.

5. One who gives his bond for the delivery of a steamboat, which had been attached, thereby acquires such an interest as he may have insured.

it actually occurred might have been effected, had that plan been resorted to in the first instance, yet as a less expensive mode of extricating it was desirable, and was deemed practicable by men skilled in such matters, the attempt which was made to avail themselves of that mode to effect the object, cannot be attributed to a breach of good faith on their part. The master may have supposed that he had a right to abandon, as for a complete loss, and may have been inclined to do it, but having ascertained that no such right existed according to the terms of the policy, he addressed a written communication to the underwriters, informing them of the condition of the boat, of the measures he was about to adopt to preserve it from further injury, and that he was willing to be advised by them on that subject. He then returned to the boat, and continued to use every reasonable effort to get it afloat, until the object was accomplished. He did shortly, after it grounded, discharge the pilots, and perhaps a part of a the crew; but their services were no longer necessary, and had they been retained it would only have unnecessarily increased the expenditure, without having aided, in any degreee, in releasing the boat from its perilous condition. He had, however, before any of the crew were discharged, lightened the boat by removing the greater part of the freight, and made such efforts to get it afloat as made it manifest that it could not be effected by the crew, or without a resort to extraordinary means.

The items constituting the aggregate amount of the whole damage sustained by the injury to the boat, and allowed by the chancellor, are such as were deemed proper by this court in the case of the *Fireman's Insurance Company* v. *Fitzhugh, &c.* 4 *Ben. Monroe*, 160.

Wherefore the decree is affirmed.

*Guthrie, Ballard*, and *Robertson*, for plaintiffs; *Speed & Worthington*, and *Ripley*, for defendant.