The W. F. M. I. Co. *vs.* Henry Miller.

General Term—January 1855.

Before STORER, GHOLSON, and SPENCER.

## THE WESTERN FARMERS' MUTUAL INSURANCE COMPANY
### *vs.*
### HENRY MILLER,
[Who sues for the use of the Executor of Ethan Stone, dec'd.]

A policy of insurance, in respect of the rules by which it is to be construed, and the principles by which it is to be governed, differs nothing from other written mercantile contracts.

The common expression, that it is "eminently a contract of good faith," means only, that the good faith, which is the basis of all contracts, is more especially required in that species of contract, in which one of the parties is supposed to be necessarily less acquainted with the details of the subject of the contract, than the other.

A policy of insurance is a contract of indemnity, and the right to that indemnity, vested by the contract, can be taken away only on principles alike applicable to other instruments of that character.

Where in reference to the use of premises, adjoining those insured, there is no condition in the contract express or implied, and there has been no representation or suppression of any fact relating to the subject matter, the insured would have the the same right to use his adjoining property, and would be governed by the same obligations, in respect of its use, as any other owner.

If such use be in itself lawful and right, though in its consequenses a loss result, it is *damnum absque injuria*, and no legal responsibility rests on the owner.

A suppression or misrepresentation of material facts, though from ignorance, mistake, or negligence, stands on the same ground in its effect on the policy, as if such suppression or misrepresentation were wilful. But the principle, on which this rule is founded, can have no application to the conduct of the insured subsequent to the making of the contract.

There are some representations in their nature promissory. *Ex gra.* the estimate of the risk to be assumed, when it depends upon the *continuance* of material circumstances represented to the insurer.

The materiality of a representation in no way depends upon the contingency of an injury, resulting from the failure to make it good, The falsity of the represen-tation will avoid the policy, though the loss occurred from a cause unconnected with the misrepresentation.

Plaintiffs in error, Defendants below.

STORER, J.

The plaintiffs seek to reverse a judgment, rendered in Special Term by GHOLSON, Judge.

On the trial, it appeared, that the plaintiffs in error, who were then defendants, had insured the present defendant, Miller, "*against lost or damage by fire on his Brick Tavern House,*" on the corner of Lawrence and Front Streets, Cincinnati, in the sum of Two Thousand Dollars, the risk was to commence on the 17th January 1852, and continue for one year next succeeding. The premises were destroyed by fire, on the 14th of December 1852, and the policy assigned to the Executor of Stone on the 28th December in the same year.

The defendant pleaded the general issue, and filed a special plea, setting forth among other things, that the plaintiff ought not to recover, "because, at the time the policy issued, the plaintiff was in possession through his tenants of a brick building, adjoining the property insured, which building had, by and with the plaintiff's consent, been used as and for a manufactory of laths, and afterwards, and before the premises insured had been burned, the occupation and use of said building had, by and with the plaintiff's consent, been changed from a lath factory to a manufactory of spokes; by which change of use, the risk of loss by fire of said building, and of the property insured, was enhanced, and afterwards, and in consequence of said use as a manufactory of spokes, the building, in which the same was carried on, took fire and was consumed, and said fire was communicated and extended to the property insured, which was also consumed, whereby the loss occurred, &c., as alleged." To this plea the plaintiff below demurred.

The Judge at Special Term sustained the demurrer, and gave judgment against the defendants, for the amount of the loss.

The only error assigned, is the refusal of the Court to sustain the above plea.

It is admitted that the insurers, at the time the risk was taken, knew, that an adjoining building, to the premises insured, was used and occupied as a lath factory. There is no proof of concealment, or misrepresentation, on the part of the insured, and no warranty in the policy, that the use of the adjoining property should be restricted to any particular employment. It is not alleged that there was fraud, or bad faith, in the occupation of the building at the time the policy was issued, or afterwards; the ground is taken generally, that the risk was increased by the change of use, and as the fire commenced in the building thus occupied, the insurers are discharged.

Among the many stipulations and conditions in the policy, there is none that subjects the insured to a forfeiture of the contract, if the risk should be increased by the occupation of the adjoining building; in fact, there is no reference to it for any purpose.

It is sought, however, to sustain the plea, on the assumption, that if a loss should happen to the property insured, by the destruction of the adjoining property, the insurers are discharged, if there should be an increase of risk in the mode of occupation.

We have already intimated, that the insurers have provided for no such contingency in their policy. They might very properly have made it the subject of contract, and stipulated accordingly; but they have forborne to do so, and we are therefore to determine the rights of the parties, by the ordinary rules of law, in relation to the construction of agreements.

It has been said, and very justly too, that the contract

of insurance is eminently one of good faith, and so we regard it, especially as the rule is applicable to marine risks, where so much confidence is placed in the representations, and the knowledge of the assured; but we find no difference in the degree of fairness, and honest intention, required in all agreements, whether they pertain to the sale of merchandize, the performance of stipulated duties, or the insurance upon property. Good faith lies at the foundation of all contracts, and where it is essentially wanting, the obligation to perform them is at an end; but what good faith is, how far it extends, and how it is to be estimated, must depend, not upon doubtful constructions, or nice distinctions; it is simply the application of the maxim, as old in law as it is true in ethics: " *Sic utere tuum, ut alienum non laedas.*" 1 *Sandford S. C. R.* 137–151. Howe *vs.* Mutual Ins. Co.; 1 *Selden* 469–474. Gates *vs.* Madison Mutual Ins. Co.

If the adjoining building, to the property destroyed, was not the subject of representation, or warranty by the insured, and no mention is made of it in the policy, nor any increase of risk provided for, our inquiry is narrowed down to this: does the mere change of use or employment in that building, where no fraud is suggested, furnish a defence to this action, if the loss of the property insured was occasioned by the destruction of the adjoining building?

In Pim *vs.* Reid, 6 *Man. & Granger* 1, Tindal, C. J. said with great propriety : " There is a material distinction between matters to vitiate the policy arising subsequently to the execution thereof, and such matters existing at the time the policy was effected." Coltman, J., in the same case remarked : " Independently of the conditions, there

is nothing contained in the policy, from which we can say that it would be vacated by a mere change of business. It is effected upon a paper-machine, and other property therein described; and the circumstance of cotton-waste having been lodged on the premises, and the danger of fire thereby increased must be provided against by specific condition, otherwise the policy would not be avoided;" and Maule, J. held, " that in the absence of fraud such an alteration would not vitiate the policy; and that the insurers must pay for any loss, nothwithstanding such alteration, unless they have provided against it in the contract." Cresswell, J. agrees fully with his brethren, and holds, "that without fraud on the part of the assured, where the conditions of the policy did not forbid the change of business, the policy would not have been void by the general law of insurance." See also Shaw *vs.* Robberds, 6 *Adolph. & Ellis* 75.

In 5 *Hill* 16, Grant *vs.* The Howard Ins. Co., it was held: " As there was no express prohibition contained in the policy against the erection of additional or adjoining buildings, it is not for the Court to interpolate such a condition by construction or implication, so as to avoid the contract, whether the company had sustained any injury thereby, or not."

There can be no warranties, but those that are inserted in or made part of the policy, 14 *Barbour* 384, Wall *vs.* Howard Ins. Co.; do. 547, Young *vs.* Washington Ins. Co.; 5 *Hill* 190, Burritt *vs.* Saratoga Mut. Fire Ins. Co., where the cases are collected by Judge Bronson. The same ruling is found in 22 *Ohio* 463, Protection Ins. Co. *vs.* Harmer.

Where there is no clause or condition prohibiting

42

another use of the building insured, though the occupation afterwards may be more hazardous, than the use to which it was appropriated when the risk was taken, we understand it to be the settled law, that such a change by the insured does not vacate the policy. The insurer may always protect himself, by a clause in the contract, and the extent to which conditions are already inserted in the policy, or made a part of it by direct reference, is conclusive as to the understanding of all intelligent underwriters, as to their ultimate liability. Their shrewdness and experience may well anticipate all probable perils during the existence of the risk, more especially when the subject insured is fully known at the time the risk commenced; and it cannot, therefore, be claimed that, when they have not protected themselves by the policy, they should be permitted to seek immunity in the courts.

If this is the rule, as to the specific property insured, for a much stronger reason it must apply to buildings that are not named in the policy, or contemplated in the risk.

We are told, however, and the point is ingeniously argued, that it was lawful and right to occupy the adjoining building, in the mode in which it was used, when the risk commenced, and even to change its use, provided no injury happened to the property insured, by its destruction. This proposition involves a seeming paradox, and may be stated thus : there is no prohibition against the use of the property for any purpose, if no actual injury happens to the buildings insured. However hazardous the use, the question is not the danger incurred, but the loss actually sustained; thus determining the act which creates an additional risk, by the result it may produce, rather than by the nature of the act itself. This mode of reasoning re-

verses very summarily the rule of construction, as to express warranties, for the rule would then be, not whether the insured had violated his engagements, but whether the violation caused the loss.

A warranty must be literally fulfilled; when the condition is once prescribed, and made part of the agreement, it must be performed, or the risk is at an end. It is not made to depend upon remote consequences or probable results; it becomes void by the act of the insured, the moment he violates his contract.

We are referred to Stebbins *vs*. The Globe Ins. Co., 2 *Hall's S. C.* 632. In this case, the insured, at the time he applied for the risk, presented a diagram of the property, a portion of which was marked *as vacant:* this paper was referred to in the policy. After the risk commenced, the insured erected buildings upon the vacant part of his lot, and a loss having occurred, it was claimed that the words *as vacant* contained a warranty, that the ground should not be built upon during the risk, except the insurers should consent. Judge Oakley, in deciding the case, held, that though in his judgment, the policy was not rendered void by the subsequent erection of the buildings, it by no means follows, that the insurers are compelled to bear any loss which may be the result of any act on the part of the insured; the contract has its foundation in the mutual good faith of the parties. If the assured should violate that good faith in any circumstance entering into the creation of the contract, it is no doubt void; and if, subsequently to the commencement of the risk, he acts with fraud or gross negligence, he ought not to recover. This we regard as the substance of the Judge's opinion; he confines, we think, the act, that would

under the circumstances proved vacate the policy, to the fraudulent conduct of the assured, and it is not consistent, on any other construction, with the evidence in the case, and the finding of the jury.

In 13 *B. Munroe* 283, Howard *vs*. Kentucky and Louisville Ins. Co., the Court said : " The erection of an adjacent building by the assured did not render the policy void, there being no prohibition against it in the policy. It might not have produced any actual injury to the insurers, even if it greatly increased the risk, and as the act did not violate any stipulation in the policy, the law would, in the event that no injury resulted from it, regard it as harmless and unimportant." It is then held, " the contract of insurance rests upon the mutual good faith of the parties, and that good faith is violated by doing any act which increases the risk. The act does not impair the rights of the insured, if no loss follows ; but if it occasions a loss, such loss devolves upon him." To sustain this ruling, the case of Stebbins *vs*. The Globe Ins. Co., is quoted, which, in our judgment, furnishes no argument in its favor; and *Phillips on Insurance* 177, where the same case is the only authority quoted for the statement of the commentator.

In Boatwright et al. *vs*. Ætna Insurance Co., 1 *Strobhart* 281, Judge Richardson held, that "the established principle is this, if the risk is materially increased by the act of the assured, and loss follows, the policy is avoided; and again, no underwriter has ever been held to be answerable for losses, directly and evidently occasioned by the fault of the assured; " this, we admit, is the general rule as applicable to marine risks ; but we cannot find any authority, by which we are authorized to bring within it

a loss upon a fire policy, unless there is some covenant to forbid the act, or where, as we have already said, there is fraud.

The rule clearly is, where the parties to an agreement have defined its terms, and prescribed its obligations, that nothing can be required beyond it, of either party, except good faith.

Express covenants take away all implied covenants, and none such can be inferred. 11 *Johns.* 122, Vanduken *vs.* Vanduken. This is but the just exposition of the legal maxim : *"Expressio unius est exclusio alterius."*

The case of Stebbins *vs.* The Globe Ins. Co., which seems to have been one of first impression, as it is referred to so often, has been lately considered by the Supreme Court, and the Court of Appeals of New York, in 1 *Selden* 476, Gates *vs.* Madison Co. Mutual Ins. Co., and 14 *Barbour* 555, Young *vs.* Washington Co. Mutual Ins. Co. These cases very materially qualify the supposed ruling of Judge Oakley, and, we think, are not in conflict with the view we have taken:

The law is now settled, both in England and the United States, that the proximate cause of the loss determines the liability of the insurer. Whatever the rule formerly was, it is now universally admitted, that a loss, occasioned by the mere fault and negligence even of the insured, or his servants, without fraud or design, is a loss within the policy. *Ellis on Ins.* 72 ; Lawrence *vs.* Col. Ins. Co., 2 *Peters* 47 ; same case, 10 *Peters* 508 ; Patapsco Ins. Co. *vs.* Coulter, 3 *Peters* 222 ; Perrin's Adm'r *vs.* Protection Ins. Co., 11 *Ohio* 147 ; Waters *vs.* Merchants' Lou. Ins. Co., 11 *Peters* 213 ; 5 Mees & Welsby 413, Dixon *vs.* Saddler.

If the neglect or carelessness of the insured, when applied to the subject insured, cannot prevent the recovery of a loss by fire, can it be claimed that a different rule attaches to a supposed increase of risk in new erections, or the use of adjoining buildings different from the original occupation? If there must be fraud to vacate the policy in the one case, there must assuredly be the same reason to require it in the other.

Unless, then, in a case like the present, bad faith is actually proved to exist on the part of the insured, we hold he would have the right to recover: and as no such act is alleged in the defendant's second plea, the Judge, who tried the case at Special Term, we are satisfied, decided rightly,—and the judgment, rendered by him, is therefore affirmed.

HOADLY for plaintiffs in error.

TAFT for defendant in error.

---

In Special Term—January 1855.