## LIVE STOCK INSURANCE ASSOCIATION OF HUNTINGTON COUNTY *v.* EDGAR.

[No. 8,337. Filed June 12, 1914.]

1. APPEAL.—*Assignment of Errors.—Questions Reviewable.—Com-
plaint.*—The sufficiency of a complaint filed since §348 Burns
1914, Acts 1911 p. 415, became in force can not be presented on
appeal by an assignment that such complaint does not contain
facts sufficient to constitute a cause of action. p. 494.

2. PLEADING.—*Complaint.—Demurrer.—Waiver of Defects.*—In de-
termining the sufficiency of a complaint as against a demurrer
thereto, all defects are waived except those pointed out in the
memorandum accompanying the demurrer, as required by §344
Burns, 1914, Acts 1911 p. 415. p. 494.

3. INSURANCE.—*Live Stock Insurance.—Action.—Issues.—Answers
to Interrogatories.*—In an action to recover on a policy in-
suring plaintiff against loss of a horse by death, where defendant
answered that the horse had been killed by plaintiff's own act,
and plaintiff filed a reply admitting that he had killed the horse,

but alleging that it had received an injury from which it could not recover, and that on the advice of a veterinary surgeon and others of experience in such matters, he shot and killed the horse to relieve it from pain and suffering, and to avoid a charge of cruelty to animals, a verdict for plaintiff found the averments of the reply to be true, hence answers to interrogatories showing substantially the facts alleged in the answer were not in irreconcilable conflict with the general verdict.   p. 494.

4.   INSURANCE.—*Live Stock Insurance.—Death of Animal by Act of Insured.—Liability.*—Where a horse had been fatally injured without any fault of the owner, and thereafter on the advice of a veterinary surgeon and others of experience in such matters, he shot and killed it for the purpose of relieving it of pain and suffering and to avoid the charge of cruelty to animals, the loss was within the meaning of a policy insuring against loss by death and rendered the insurer liable.   p. 495.

5.   APPEAL.—*Review.—Harmless Error.*—Error in the admission of evidence or the giving of instructions is not cause for reversal where appellant was not harmed thereby.   p. 498.

6.   APPEAL.—*Assignment of Errors.—Designation of Parties.*—The assignment of errors should properly designate the parties to the appeal, otherwise a dismissal of the appeal is authorized, unless the defect is one which is clerical in character and may be deemed amended.   p. 498.

7.   APPEAL.—*Assignment of Errors.—Caption.—Cure of Defect.*—Where appellant in the caption to the assignment of errors designated the appellee as "Edgar Atkinson" instead of "Atkinson Edgar", in whose favor the judgment below was rendered, and notice of the appeal was served on Atkinson Edgar, who appeared and filed briefs on the merits, without questioning the assignment of errors, the defect in name will be treated as clerical and the assignment of errors deemed amended.   p. 498.

. From the Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by Atkinson Edgar against the Live Stock Insurance Association of Huntington County.   From a judgment for plaintiff, the defendant appeals.   *Affirmed.*

*George M. Eberhart* and *Emmett O. King,* for appellant. *Fred H. Bowers* and *Milo N. Feightner,* for appellee.

HOTTEL, J.—This is an action brought by appellee against appellant on a contract of insurance for the death of a

horse insured in appellant's company. The complaint, omitting the formal and preliminary averments, charges in substance that appellant on March 18, 1910, issued a policy of insurance to appellee whereby in consideration of certain warranties, representations and stipulations, hereinafter set out, it insured appellee against loss on certain live stock; that item No. 10 of the live stock so insured was a mare named Kit, particularly describing her; that by the terms of said policy of insurance appellant agreed to pay appellee the sum of $50 for loss of such mare; that in consideration of said payments made and to be made from time to time, and in consideration of the payments of assessments duly levied on appellee by appellant from time to time, appellant promised and agreed to make good to appellee any and all loss or damage to said mare; that during the continuance of such contract of insurance, and while the same was in full force and effect, to wit, on December 22, 1910, such mare was accidentally injured and killed, and this plaintiff suffered a total loss in the sum of $80; that the accident and injury were without the fault or negligence of appellee; that appellee has fully paid all assessments, dues and charges demanded of him by appellant and has fully complied with all the terms, conditions and stipulations of said policy of insurance in every respect; that he notified appellant of the loss and damage accrued to him by virtue of the death of said mare and demanded payment as promised and agreed by the terms of said policy, and payment was refused.

Such policy of insurance contains a provision by the terms of which appellee, in consideration of the warranties, representations and stipulations contained in his application, etc., is insured "in the amount of six hundred forty-five dollars, *against loss by death or theft, on the named and specified live stock* on page two of this policy for the term of twelve (12) months, commencing at 12 o'clock noon March 19,

1910", etc. (Our italics.) On page two of said contract the horse in question is described and it is shown that it was insured in the amount of $50.

Appellant is an assessment company and its constitution which is a part of such policy provides as follows: "Sec. 4. First. To unite and combine members in the territory granted by the Indiana Statutes on the mutual assessment plan for the protection against loss by death or theft of the live stock of its members insured in the manner as contracted and mentioned in the application and policies. * * * Sec. 11. The mortuary fund shall be constituted and derived from the assessments on each member of ten (10) cents on each death, One Hundred ($100.00) Dollars valuation insured, in case of loss by death or theft and in no case shall the assessment be less than Ten (10) cents on each death loss or theft, though the valuation or face of application or policy read less than one hundred ($100.00) dollars, over $100.00, pro rata."

A demurrer for want of facts together with the memorandum of defects as required by §344 Burns 1914, Acts 1911 p. 415, was overruled and appellant answered in two paragraphs, the first of which was a general denial and the second, an affirmative answer admitting the execution of the policy sued on, and averring in substance that the loss of said horse was not the result of any risk insured against, and was not the result of theft or death, as provided for by said policy; that the loss was caused by appellee's own act and deed, by shooting and killing said horse, all of which was done against the advice and orders of appellant's officers and agents. That after said insurance was in force, said horse broke its leg, and thereafter appellee gave it no attention, but instead shot and killed it; that a loss resulting from such shooting and killing was not one of the risks covered by such contract of insurance, which appellee well knew when he shot and killed said horse. The insurance contract or policy of insurance is made a part of such answer.

A demurrer to said answer for want of facts was overruled and appellee replied by general denial and by an affirmative paragraph, admitting that the horse in question was killed by appellee, but averring in substance that before it was killed its hind leg, between the hip and knee joint, had been broken by violent external and accidental means; that the femur bone of said horse was splintered and shattered and the flesh about said wound and said bone was contused, bruised and lacerated and the broken parts of said femur bone protruded through the flesh and skin of said leg; "that said accident produced a compound comminuted fracture  *  *  *  that the said wound was wholly incurable; that appellee was informed by the veterinary surgeon, and other men skilled in the care of horses, and men having knowledge and long experience in caring for wounds of horses and other animals, that said wound was wholly incurable and that said horse was wholly worthless, and would never be able to walk, but would die in a short time; that said horse was suffering great pain and misery; that appellee was advised that the humane and proper thing and the only thing that could be done with said horse under all of the circumstances and facts herein above set out, would be to kill said horse and relieve the same of great misery and pain; that appellee after being duly advised as herein stated, by said veterinary surgeon and other men of experience, for the purpose of relieving said suffering animal of great pain and misery, and for the further purpose of avoiding the liability of being charged with the crime of cruelty to animals, did then and there cause said horse to be killed. This paragraph of reply also avers in substance that the representatives of said company represented to appellee that a loss of such nature was covered by the contract of insurance.

The errors assigned and relied on for reversal are: (1) The complaint does not state facts sufficient to constitute a cause of action. (2) The court erred in overruling appel-

lant's demurrer to appellee's complaint. (3) The court erred in overruling appellant's motion for judgment in its favor upon the interrogatories answered by the jury notwithstanding the general verdict. (4) The court erred in overruling appellant's motion for a new trial. (5) The judgment appealed from is clearly against the weight of evidence.

The complaint in this case was filed on April 21, 1911, the day on which the amendment of §348 Burns 1908, §343 R. S. 1881, came in force. No question is therefore 1. presented by the first error assigned. §348 Burns 1914, Acts 1911 p. 415; *Stiles* v. *Hasler* (1914), *post* 88, 104 N. E. 878.

In determining the sufficiency of the complaint against the demurrer thereto, all defects are waived except those pointed out in the memorandum accompanying such 2. demurrer. §344 Burns 1914, Acts 1911 p. 415; *Stiles* v. *Hasler, supra.* The defects pointed out in the memorandum filed with appellant's demurrer are so manifestly untenable, or so clearly of a character not reached by a demurrer, that we deem it unnecessary to set out or discuss them. Appellant by the defects so pointed out doubtless sought to present in a different form the same question which he attempts to present by his third assignment of error.

By its answers to interrogatories the jury found that the horse in question received a kick from another horse and as a result thereof its leg was broken; that appellee 3. afterwards shot and killed such horse; that before killing it appellee was informed by Emmett D. Beaver a member of the board of directors of appellant that he should not kill said horse, that if he did he would thereby forfeit his insurance. As against these answers the general verdict is a finding that the averments of appellee's affirmative reply are true and that appellee killed his horse for the reasons and under the circumstances therein set out.

It seems that appellant never questioned the sufficiency of such reply by a demurrer, but he is now very earnestly insisting that the answers to interrogatories above indicated are in irreconcilable conflict with the general verdict.

As hereinbefore indicated the policy provided for payment in the event of *loss by death or theft.* Appellee made a written application for such insurance, which application stipulates that it shall become a part of the conditions and requirements for which a policy may be issued, and in which appellee agreed that the stock described therein should be well cared for and not neglected or abandoned or unnecessarily exposed to danger and in case of sickness or accident that the same should receive the care of a licensed veterinary surgeon if possible, also, that such association should not be held liable for the death of the above described stock occurring through negligence or carelessness. Appellant in effect concedes that it would be liable if the horse had died from the effects of the broken leg resulting from the kick of the other horse. It follows that the question which we are called on to determine is whether the death of the horse by the act of the insured under the circumstances set out in said affirmative reply is within the meaning of the contract of insurance on which this action is predicated. This is the controlling question presented by the appeal. This question to our knowledge has not been passed upon by this or the Supreme Court, but the precise question has been passed upon by courts of other jurisdictions. *Klopp* v. *Bernville Live Stock Ins. Co.* (1866), 1 Woodw. (Pa.) 445; *Heffner* v. *Pennsburg Mut. Horse Ins., etc., Co.* (1895), 6 Del. Co. R. (Pa.) 168.

In the case first cited the terms of the contract were not clear, but it was admitted that had the horse died a natural death the plaintiff would be entitled to recover. While the policy was in force the horse was attacked with glanders, an "incurable and infectious disease", and the plaintiff, "acting under the advice of a veterinary surgeon, and in

good faith, killed him.'' In the course of its opinion the court said: ''It is to be observed that the contract contains no prohibition of the act done by the plaintiff; and that in general terms provision is made for payment in the event of the death of the animal insured. Of course, no wanton act of the plaintiff would give him the right to recover. He could not kill his horse in order to obtain his insurance. But does it follow that he would in no event be entitled to payment without awaiting the period of natural death? This would be so undoubtedly if there were terms of prohibition in the contract; but in the absence of such terms, why should not legal rules, rationally applied, justify on the part of the owner a reasonable and sound discretion in the destruction of an animal whose preservation could secure no possible advantage, and would be productive of certain inconvenience, and of probable danger to the owner himself, to the members of his family, and to his remaining property? Unquestionably the discretion in such case would have to be exercised with good faith and in view of an existing reasonable necessity. * * * it would seem clear that if this loss had been caused by the fault or negligence of the owner, not amounting to fraud or crime, he would, in the absence of stipulations to the contrary, be entitled to recover. This doctrine has long prevailed in relation to policies of marine and fire insurance. *Columbia Ins. Co.* v. *Lawrence* [1836,] 10 Pet. *507, *518 [9 L. Ed. 512]; *Waters* v. *Merchants' Ins. Co.* [1837], 11 Pet. 213 [9 L. Ed. 691]. In the *City Fire Ins. Co.* v. *Corlies* [1839], 21 Wend. [N. Y.] *367 [34 Am. Dec. 258], the insurers were held liable for goods destroyed by the blowing up of the building containing them by the city authorities to stop the progress of the great fire in the city of New York. In all of the cases referred to the decisions were on the ground that fire, against which the companies had insured, was the proximate cause of the destruction of the property and it was held immaterial what was the occasion of the fire itself,

so that it did not originate in the owner's fraud. Here, the insurance (under the policy and the by-laws taken together) was against the loss of a horse by death. The death has occurred by the act of the owner, it is true—but if the act was necessary and in good faith, it is believed that the principle of the authorities is in general accordance with the theory of this opinion.''

In the Heffner case, *supra,* the question arose on determining the sufficiency of an affidavit of defense. The plaintiff had his horse insured in the defendant company. He alleges in his statement that the horse was taken with an incurable and contagious disease, and was killed by direction of a skilled veterinary surgeon. In opinion by Swartz, P. J., the court said: . ''The policy declares that the insurance is against 'loss by death, accident or theft,' pursuant to the charter and by-laws of the company. If it became necessary to kill the horse because he was incurable and had a contagious disease, why this was not loss by death? Article I of the by-laws provides 'the company shall have full power to make all and every insurance appertaining to or connected with life, theft, and risk of horses.' Where the killing becomes necessary because of the contagious disease, or because the sufferings of an incurable beast demand it, it is difficult to distinguish such a death from that by disease, at least so far as the loss is concerned.''

These authorities and the general rule that contracts of insurance which are uncertain and admit of two constructions, one favorable to the insurer, and the other favorable to the insured, are to be construed in favor of the insured, authorize the conclusion that the death of appellee's horse under the facts set out in his reply created a liability against appellant under its policy of insurance herein sued on, and hence that the said answers of the jury to interrogatories are not inconsistent with its general verdict.

Appellant raises the same question by the ground of its

Vol. 56—32

motion for new trial, based on the insufficiency of the evidence to sustain the verdict. There was ample evidence to support each material averment of appellee's affirmative reply. It follows therefore that our disposition of the third assignment of error also disposes of such ground of the motion for a new trial.

Objection is made to instructions given and evidence admitted, but if we are right in our disposition of the controlling question presented by the appeal, error, if any, resulting from either of such rulings was harmless, and hence furnishes no ground for reversible error.

However, before affirming the judgment below it should be stated that appellant in its caption to its assignment of error has incorrectly designated the appellee as "Edgar Atkinson" instead of "Atkinson Edgar", in whose favor the judgment below was rendered, and that the title of the cause in this court has followed the assignment of error and so designates the appellee. The assignment of error is the complaint in this court and should properly designate the parties to the appeal. *Smith* v. *Holtz* (1901), 26 Ind. App. 692, 60 N. E. 728; *Hutts* v. *Martin* (1895), 141 Ind. 701, 41 N. E. 329. The error indicated, unless it can be treated as clerical in character, and therefore amended, would authorize a dismissal of the appeal. *Simons* v. *Kosciusko Bldg., etc., Assn.* (1913), 180 Ind. 335, 103 N. E. 2, and cases cited; *City of Decatur* v. *Eady* (——), — Ind. App. —, 105 N. E. 590. It appears, however, that the notice of the appeal was served on the proper person, viz., Atkinson Edgar, and he has appeared in this court and filed briefs on the merits and raised no question as to such assignment of error. We therefore treat said error as clerical, and the assignment of error as amended, and affirm the judgment below instead of dismissing the appeal.

NOTE.—Reported in 105 N. E. 641. As to proximate and remote cause in insurance cases, see 36 Am. St. 852. On the question of animal insurance, see 44 L. R. A. (N. S.) 569. See, also, under (1) 2 Cyc. 989; (2) 31 Cyc. 312, 316; (3) 38 Cyc. 1927; (4) 25 Cyc. 1520; (5) 38 Cyc. 1411, 1809; (6) 2 Cyc. 985; (7) 2 Cyc. 1006.