A. LOU BENASSI *et al.*, Plaintiffs-Appellees, *v.* CINCINNATI INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 15253

Opinion filed April 6, 1979.

Henry D. Noetzel & Associates, Ltd., of Peoria (William J. Thomas, of counsel), for appellant.

A. Lou Benassi, of Peoria, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This action was brought to recover the value of a horse under the provisions of a homeowner insurance policy issued to the plaintiffs, Lou and Patricia Benassi, by the defendant, Cincinnati Insurance Company. After hearing arguments on the motions for summary judgment submitted by both parties, the trial court granted plaintiffs' motion and entered judgment in favor of the plaintiffs for $4,000, plus costs. Unfortunately, no opinion was written nor were any reasons stated in support of the judgment entered by Judge Harrod. On appeal, the defendant argues that the trial court erred in granting summary judgment for the plaintiffs since the insurance policy covered only the accidental death of the horse from perils enumerated in the policy rather than death from any cause.

The facts of this case as set forth in the stipulated statement of facts filed with the motions for summary judgment reveal that during August 1977, the plaintiffs purchased a homeowner policy from the defendant. This policy was issued on October 1, 1977, and part of the coverage under that policy provided insurance coverage in the amount of $4,000 for a quarter horse by the name of Denver Mint, owned by the plaintiffs.

On February 18, 1978, Denver Mint shattered the second phalanx of his left hind leg while engaged in cutting cattle during a training session. The horse was taken immediately to a veterinarian, and, after examination, the veterinarian stated that he could not repair the broken bone

and he suggested that the horse be taken to an equine specialist. The veterinarian placed the left hind leg of the horse in a standing cast so the horse could be transported.

On February 20, 1978, the horse was examined by an equine orthopedic specialist. It was determined that the leg could not be repaired and that the horse had to be destroyed. The following day the horse was shot and it died as the result of the gunshot wound. A veterinarian was present and supervised the shooting.

The plaintiffs thereafter filed a claim pursuant to the policy. The defendant refused to pay and this action ensued.

The homeowner policy issued by the defendant to the plaintiffs provides the following coverage for livestock:

"2. THIS POLICY INSURES:

❋ ❋ ❋

B. Livestock against death or destruction directly resulting from or made necessary by:

1. Fire, Lightning, Windstorm, Hail, Explosion, Smoke, Aircraft, Riot, Civil Commotion or Vehicles;
2. Theft, Flood, Earthquake, or Accident to Transporting Conveyances;
3. Collapse of Buildings or other structures, Drowning, Artificial Electricity, Shooting or Attack by dogs or wild beasts."

The plaintiffs urge that the terms of the policy are not ambiguous and that the plain meaning provides coverage for the shooting of the horse. The plaintiffs note that the relevant portion of the policy plainly states:

"2. THIS POLICY INSURES:

❋ ❋ ❋

B. Livestock against death or destruction directly resulting from ❋ ❋ ❋.

❋ ❋ ❋

3. ❋ ❋ ❋ Shooting ❋ ❋ ❋."

■■ In comparing the entire policy provision with the abbreviated form noted by the plaintiffs it is apparent that they have taken the word "shooting" entirely out of context. It has been noted that an insurance contract, like any other, is to be interpreted from an examination of the complete document and not an isolated part. (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873.) In construing insurance contracts, this court has recognized the rule that insurance contracts are construed in favor of the insured. However, in so doing, that construction should not degenerate into a perversion of plain language to create an ambiguity where none exists or to father a contract obligation where none is stated or reasonably implied. *Bartulis v.*

*Metropolitan Life Insurance Co.* (1966), 72 Ill. App. 2d 267, 218 N.E.2d 225.

■■ When the other portions of this policy provision are considered, it is evident that the term "shooting" was intended to be read in conjunction with the other accidental perils enumerated in the provision. In reading that provision in its entirety, the intent becomes quite clear and it is apparent from a consideration of the other causes of death specified in the policy that coverage was to be afforded only when death of livestock was due to a cause that could be characterized as purely accidental. Consequently, the policy covered only the accidental causes of death as specified in the policy rather than being a "life insurance policy" which would have been payable no matter what caused or precipitated the death.

In this case, the reason the horse had to be destroyed or shot was that it suffered a broken hind leg while engaged in cutting cattle during a training session. The shooting was not accidental but intentional since a veterinarian had examined the horse and determined that the leg could not be repaired. Accordingly, he advised that it was necessary to destroy the horse.

In reviewing the policy provision once again, it is obvious that the injury sustained by the horse and which precipitated its destruction was not one of the perils listed in the policy. As the defendant correctly notes, the plaintiffs would not have been able to collect under the policy if the horse died suddenly as the result of injuries sustained in a fall or if the destruction of the horse had been accomplished by means of a lethal gas or the injection of a toxic agent. The clear intent of the policy was to cover accidental death or destruction of livestock resulting from one of the enumerated causes listed in the policy. The coverage of that policy provision is limited to the specific perils listed and the clear implication is that there was no intention to provide the type of coverage for which the plaintiffs argue.

Plaintiffs quote the following to support their argument:

"In the absence of an exception there is coverage even when the insured kills the animal because of necessity. According [*sic*], recovery may be had on a policy against the loss of a horse by death where the insured, acting upon the advice of experts in such matters, consented to its being killed in consequence of an incurable * * * fracture of the leg." 11 Couch, Cyclopedia of Insurance Law §42:399, at 189 (2d ed. 1963), citing *Live Stock Insurance Association v. Edgar* (1914), 56 Ind. App. 489, 105 N.E. 641.

As noted, the authority for this proposition is taken from the *Edgar* case. In *Edgar*, the plaintiff brought an action against the defendant

insurance company on a contract of insurance for the death of a horse insured by defendant's company. The plaintiff had taken out a policy which insured against losses on certain livestock and one of the items of livestock was a mare for which the defendant agreed to pay plaintiff $50 in the event of a loss. The mare was accidentally injured and suffered a broken leg. Plaintiff was informed that the broken leg was incurable and he was advised by a veterinarian surgeon to destroy the mare. After doing so, he filed a claim for damages with the defendant insurance company, and they refused to pay. The plaintiff thereafter filed suit, and the trial court subsequently entered judgment in the plaintiff's favor.

The Indiana Appellate Court, in affirming the trial court's judgment, noted that the insurance policy provided for loss by death or theft and, in addition, noted that the defendant had agreed to compensate the plaintiff for any and all loss or damage to the mare. The court also observed that the defendant had, in effect, conceded that it would be liable if the horse had died from the effects of the broken leg rather than being shot by the plaintiff.

In the instant case, the defendant, unlike the defendant in *Edgar*, did not concede that it would have been liable if the horse had died from the effects of the broken leg. In fact, as noted previously, the defendant specifically argued that such coverage was not provided by the policy. Moreover, in this case, the defendant insurance company did not agree to compensate the plaintiff for any and all loss or damage to the horse but only for the loss resulting from the causes listed in the policy. Additionally, it should be noted that the authorities relied upon in the *Edgar* case were generally cases involving "life insurance" for livestock rather than accidental death insurance. Consequently, the *Edgar* case is distinguishable from the case at bar and the proposition quoted from Couch is not applicable here.

In summary, the shooting was determined to be necessary because of injuries resulting from an uninsured cause. Since the death of the horse was as a result of an uninsured cause, there was no coverage provided by the policy, and the trial court erred in so finding. Accordingly, we reverse and remand this cause with directions to enter summary judgment for the defendant.

Reversed and remanded with directions.

REARDON, P. J., and MILLS, J., concur.